**VERMONT GAS SYSTEMS, INC., Plaintiff,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, Employer's Surplus Lines Insurance Company, St. Paul Surplus Lines Insurance Company and Associated Electric & Gas Insurance Services, Ltd., Defendants.**

**Civ. A. No. 90–121.**

United States District Court, D. Vermont.

Oct. 19, 1992.

Leo A. Bisson, Jr., Bruce C. Palmer, Downs, Rachlin & Martin, St. Johnsbury, Vt., for plaintiff.

Allan R. Keyes, Ryan, Smith & Carbine, Ltd., Rutland, Vt., for defendant U.S. Fidelity & Guar. Co.

Samuel Hoar, Jr., Philip C. Woodward, Dinse, Erdmann & Clapp, Burlington, Vt., for defendant Employer's Surplus Lines Ins. Co.

Peter B. Joslin, Theriault & Joslin, P.C. Montpelier, Vt., for defendant St. Paul Surplus Lines Ins. Co.

Alan Rutkin, Rivkin, Radler, Bayh, Hart & Kremer, Uniondale, N.Y., for defendant Associated Elec. & Gas Ins. Services, Ltd.,

## OPINION AND ORDER

PARKER, Chief Judge.

### I. INTRODUCTION

Plaintiff Vermont Gas Systems ("VGS") brought a declaratory judgment action, pursuant to Title 28 U.S.C. § 2201 and Fed. R.Civ.P. 57, against defendants United States Fidelity & Guaranty Company ("USF & G"), Employer's Surplus Lines Insurance Company ("ESLIC"), St. Paul Surplus Lines Insurance Company ("St. Paul") and Associated Electric & Gas Insurance Services ("AEGIS"). Plaintiff seeks to establish and enforce defendants' duty to defend and indemnify it regarding

claims by the Environmental Protection Agency (EPA) and other third parties that VGS is responsible for damages and costs associated with the Pine Street Canal Superfund Site ("Site") and its cleanup, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601–9675 ("CERCLA").

Presently at issue in this case is whether an insurer has an initial duty to defend claims against the insured even though the insurer contends it did not receive timely notice of the claims for which the insured seeks coverage, as required by the governing policy. VGS has moved for a partial summary judgment, pursuant to Fed. R.Civ.P. 56, as to the duty to defend, against defendant USF & G. Though relief is sought only against defendant USF & G, all defendants have joined in opposing the motion.

## II. BACKGROUND

### A. *Facts*

This litigation arises from the actions of the EPA in responding to the environmental problems at the Site and VGS' potential liability for those problems. The following material facts are not in dispute by any of the parties.

The Pine Street Canal and Barnes Basin were constructed in the City of Burlington in the mid–1800's to provide shipping access to several sawmills and lumber yards which were located along Pine Street in the Lake Champlain backwater marsh. In 1908, Burlington Gas Works began operation of a gas manufacturing plant on Pine Street and continued the operation until 1964, when VGS purchased property at the Site, including the gas manufacturing plant. VGS operated the plant, facilities, and distribution system located at the site from 1964 through the spring of 1966.

In early 1966, the gas plant ceased operations. On March 21, 1967, VGS sold the land on which the gas plant was located to the City of Burlington. Under the terms of the conveyance, VGS retained ownership rights over a small parcel of land until such time as it would cease to use the land as a gate station. VGS also assumed responsibility for dismantling the plant, which was accomplished by the end of 1967.

In October 1981, the Site was added to the National Priority List under CERCLA. On March 5, 1982, the EPA notified VGS that it was a potentially responsible party ("PRP") for the cost of cleaning up the site. It is undisputed that VGS did not provide USF & G notice of its receipt of this correspondence.

By a letter dated May 4, 1987 VGS was requested, pursuant to Section 104 of CERCLA (42 U.S.C. § 9604(e)), to provide EPA with specific information regarding VGS' activities at the Site. The requested information was to aid the agency's investigation of the extent of contamination at the Site, as well as the ability of persons connected with the Site to pay for or perform a clean-up of the Site.

On November 30, 1987 EPA sent a General Notice letter formally demanding VGS to reimburse EPA for past costs associated with an immediate removal action in 1985 at the "Maltex Pond" Site [1] and informing VGS of its potential liability for future cleanup costs. On February 23, 1988 EPA sent VGS a Special Notice letter reiterating its demand for reimbursements of past costs and stating that it would begin cleanup and enforcement actions at the Site unless voluntary participation was forthcoming. It is undisputed that VGS provided its insurers with notice of these three letters.

The EPA is currently performing response actions at the Site, including a Remedial Investigation and Feasibility Study ("RI/FS") to determine the extent of con-

---

1. A separate action was brought by the United States against several parties, including VGS, for the costs of cleaning up approximately one-half acre of the forty-acre Barge Canal Site, known as Maltex Pond. The suit was settled pursuant to a Consent Decree approved by this court on

November 28, 1990. In accordance with that settlement agreement, VGS, along with other settling PRPs, reimbursed EPA's costs of cleaning up the Maltex Pond, but reserved the right to contest the validity of all factual and legal allegations made in the action.

tamination and to evaluate the nature of any further response actions necessary to provide a permanent remedy for the Site.

B. *Insurance Policies*

All defendants at one time or another provided insurance coverage for VGS or its predecessor in interest. VGS and USF & G have stipulated to a number of details concerning the insurance policies issued to plaintiff by USF & G (Paper # 74). The Stipulation indicates, *inter alia*, that USF & G provided VGS, or its predecessor in interest, with comprehensive general-automobile liability (CG–A) and comprehensive general liability (CGL) policies continuously during the period from January 1, 1965

until January 1, 1979. VGS paid all required premiums for coverage under the policies during that period, and at no time during the period did VGS's coverage ever lapse or otherwise terminate. The parties have also stipulated to the policy numbers and coverage dates for each individual policy, as well as the limits of coverage for property damage under VGS's policies obtained from USF & G.

The policies provided coverage for bodily injury and property damage.[2] All policies had a notice provision which required an insured to provide written notice to the insurer if an accident occurs, a claim is made or suit is brought against the insured or in the event of an "occurrence."[3] All

---

2. The 1965 CG–A policy form (Stip.Exh. A–2) provided the following coverage:

   **COVERAGE B—BODILY INJURY LIABILITY—EXCEPT AUTOMOBILES**
   **COVERAGE D—PROPERTY DAMAGE LIABILITY—EXCEPT AUTOMOBILE**
   To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.
   The 1967 CG–A policy form (Stip.Exh. B–3) and the 1973 CGL policy form (Stip.Exh. C–3) have identical language concerning coverage for property damage and provide, in pertinent part, as follows:
   **COVERAGE B—PROPERTY DAMAGE LIABILITY**
   The Company will pay on behalf of the **insured** all sums which the **insured** shall become legally obliged to pay as **damages** because of A. **bodily injury** or B. **property damage** to which this insurance applies, caused by an **occurrence**....
   An "occurrence" is defined as "an accident, including injurious exposure to conditions, which results, during the policy period, in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**." (Stip.Exh. B–1)
   Property damage is not defined in the 1965 policy (Stip.Exh. A–2). The term is defined relatively simply in the 1967 policy (" '**Property damage**' means injury to or destruction of tangible property") (Stip.Exh. B–1) and more extensively in the 1973 policy:
   (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or
   (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
   (Stip.Exh. C–2)

3. For example, the 1965 and 1966 CG–A policies held by VGS provided, under the "Conditions" section, in pertinent part:

   CONDITIONS
   \*     \*     \*     \*     \*     \*
   4. · **Insured's Duties in the Event of Occurrence, Claim or Suit.**
   (a) In the event of an occurrence, written notice containing particulars sufficient to identify the **Insured** and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the **Company** or any of its authorized agents as soon as practicable....
   10. **Notice of Accident**
   When an accident occurs written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information reflecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.
   11. **Notice of Claim or Suit**
   If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.
   (Stip.Exh. A–1.)
   Likewise, the CG–A policies issued VGS by USF & G between 1967 and 1972 contained the identical notice condition relating to claims or suits, (Stip.Exh. B–1, Paragraph 4(b)), as did the CGL policies in effect between 1973 and 1978. (Stip.Exh. C–2, Paragraph 4(b)).

policies also included a provision requiring the insurer to defend any suit against the insured which falls within the coverage of the policy.[4]

## C. *Procedural Posture*

Plaintiff filed a motion for partial summary judgment requesting a court order requiring U.S.F. & G. to honor its obligation to defend by reimbursing previously incurred defense costs and providing an ongoing defense to the EPA claims while the declaratory judgment action is pending.

Both before and after plaintiff moved for partial summary judgment, defendants have responded to plaintiff's motion for declaratory judgment by moving for summary judgment. To summarize an ever burgeoning series of motions, briefs and responses, defendants claim that the letter of March 5, 1982 triggered plaintiff's duty to provide notice to its insurers. As plaintiff did not provide such notice, defendants claim that VGS has forfeited its right to coverage because notice was a condition precedent to any coverage. In support of this argument, defendants cite *Houran v. Preferred Accident Ins. Co.*, 109 Vt. 258, 195 A. 253 (1938) and its progeny, which held that an insured's failure to comply with a notice provision in an insurance policy results in forfeiture of coverage.[5]

Plaintiff contends that the law of Vermont has evolved since *Houran* so that notice is no longer a condition precedent or if it is, defendants must prove that they were prejudiced by the lack of notice. More fundamental to plaintiff's partial summary judgment motion is plaintiff's

contention that it is entitled to a defense of the EPA claims upon a showing that the claims fall within the policy coverage provision even though there exists an unresolved dispute about whether plaintiff was required to give notice in 1982.

This court issued a Case Management Order (CMO) (Paper # 93) on April 27, 1992 at the request of all parties save AEGIS. The CMO directs that, the court will not consider and dispose of the notice issue (raised by the defendant's motion for summary judgment) until either, (1) the court has decided plaintiff's motion for partial summary judgment or (2) the EPA has finalized its RI/FS.

Thus, the issue presently before the court is whether there is an obligation on USF & G's part to provide a defense for plaintiff in circumstances where notice was given and coverage called for but the insurer claims notice should have been given earlier, and was therefore untimely. The issue of whether this notice was timely or should have been given earlier than 1987 is not yet before the court.

## III. DISCUSSION

### A. *Jurisdiction and Standard for Summary Judgment*

The court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) and is thus required to apply Vermont law as to all substantive issues. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

---

**4.** For example, the 1965 USF & G CG–A policy form (Stip.Exh. A–2) set out the following duties of defense:

> **II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS**
> With respect to such insurance as is afforded by this policy, the Company shall:
> (a) defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent....

The 1967 CG–A policy form (Stip.Exh. B–3) and the 1973 CGL policy form (Stip.Exh. C–3) contained identical language concerning the duty to defend:

> **COVERAGE B—PROPERTY DAMAGE LIABILITY**
> [T]he Company shall have the right and duty to defend any suit against the **insured** seeking **damages** on account of such **bodily injury** or **property damage**, even if any of the allegations in the suit are groundless, false or fraudulent....

**5.** Defendant AEGIS filed a motion for summary judgment which alleged that its policy incepted after VGS had notice of the EPA claim against it and therefore that claim is precluded from the excess liability coverage it provided. (Paper 65) Defendant St. Paul joined in this motion.

██ Summary judgment may be granted the moving party only when it shows that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering the motion, the court's responsibility is not to resolve disputed factual issues, but to determine whether there is a genuine issue to be tried. *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). The court must draw all reasonable inferences in favor of the non-moving party and only grant summary judgment for the moving party if no reasonable trier of fact could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986).

B. *Duty to Defend*

1. Vermont Law

The duty of an insurance company to defend in an action is determined by comparing the allegations made against the insured to the terms of coverage in the policy. *Cooperative Fire Ins. Assn. v. Gray*, — Vt. —, —, 599 A.2d 360, 361 (1991); *see also, Commercial Union Ins. Co. v. City of Montpelier*, 134 Vt. 184, 185, 353 A.2d 344 (1976); *Commercial Ins. Co. v. Papandrea*, 121 Vt. 386, 390, 159 A.2d 333 (1960). Resolution of the question of the duty to defend is made on "the language of the policy and the language of the complaint." *Town of South Burlington v. American Fidelity Co.*, 125 Vt. 348, 349–50, 215 A.2d 508 (1965); *see also Papandreau*, 121 Vt. at 390, 159 A.2d 333 ("the duty of the insurance carrier to defend a claim is measured by the allegations upon which the claim is stated").

An insurer's duty to defend is independent of and broader than its duty to indemnify. "The duty of an insurer to enter and defend a case on behalf of its insured is broader than its obligations to respond in damages." *State v. Glens Falls Insurance Co.*, 132 Vt. 97, 99, 315 A.2d 257 (1974); *see also American Protection Ins. Co. v. McMahan*, 151 Vt. 520, 525, 562 A.2d 462 (1989).

The Vermont Supreme Court recently defined the breadth of the duty, as follows:

"The insurer has a duty to defend whenever it is clear that the claim against the insured *might* be of the type covered by the policy. *See*, 7C J. Appleman, *Insurance Law & Practice* § 4684.01, at 99 (1979) ("duty to defend exists if the claim *potentially* comes within the policy"); *Commercial Union Ins. Co. v. Henshall*, 262 Ark. 117, 123, 553 S.W.2d 274, 277 (1977) (duty to defend arises where it is *possible* that damage might fall within policy coverage)."

*Garneau v. Curtis & Bedell, Inc.*, — Vt. —, —, 610 A.2d 132, 134 (1992) (emphasis added). In *Garneau* the court concluded there was no obligation for the insurer to defend because there was "no possibility of coverage." *Id.* at 135.

██ As a matter of Vermont law then, as long as there exists a possibility that a claim falls within the coverage of an insurance policy, the insurer has a duty to provide a defense for the insured.[6]

The only way for an insurer to avoid this duty to defend is to demonstrate at the outset that the claims against an insured are entirely excluded from coverage. *Village of Morrisville Water & Light Department v. United States Fidelity & Guaranty Co.*, 775 F.Supp. 718, 725 (D.Vt.1991) ("Insurers, seeking to avoid their duty to defend, must show that a third party's claim against the insured is entirely excluded from coverage."); *see also, City of Burlington v. Glens Falls Ins. Co.*, 133 Vt.

---

6. Such a conclusion is consistent with the position adopted by the Second Circuit in determining the extent of the duty to defend under Connecticut law, *City of West Haven v. Commercial Union Insurance Co.*, 894 F.2d 540, 544 (1990) ("The general rule is '[i]f an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured'") (citations omitted), and New York law, *City of Johnstown, N.Y. v. Bankers Standard Ins.*, 877 F.2d 1146, 1148 (1989) ("The duty to defend is triggered 'whenever the allegations in the complaint fall within the risk covered by the policy'; thus, '[i]f, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured.'") (citations omitted).

423, 424, 340 A.2d 89 (1975). Or, put another way, the duty to defend does not attend to a circumstance where there is, as a matter of law, no duty to indemnify. *Garneau, supra* at 134.

### 2. Application to VGS

EPA's claim against VGS asserts that VGS is responsible for damages and costs associated with the Site and its cleanup pursuant to CERCLA. The Vermont Supreme Court has stated that the plain meaning of "damages" encompassed all the money assessed as damages "regardless of how characterized." *State of Vermont v. Glen Falls Ins. Co.*, 137 Vt. 313, 319, 404 A.2d 101 (1979). In *Gerrish Corp. v. Universal Underwriters Ins. Co.*, 754 F.Supp. 358, 366 (D.Vt.1990), this court predicted that the Vermont Supreme Court would find that environmental clean-up costs assessed under state law are "damages" within the meaning of a liability policy such as USF & G's in this case. More recently, Judge Coffrin of this court predicted "that the Vermont Supreme Court would find that environmental clean-up costs assessed under CERCLA are "damages" within the meaning of the [Comprehensive General Liability] and Indemnity policies." *Village of Morrisville, supra* at 725. This prediction followed the "clear majority of courts [who] have held that CERCLA clean-up costs are 'damages' within the meaning and scope of comprehensive general liability policies." *Id.* at 725–26.

The *Gerrish* and *Morrisville* cases are on point as to EPA's claim against VGS and VGS' coverage under the USF & G policies. EPA seeks damages from VGS because of its status as a potentially responsible party for the contamination at the Site. The Special Notice Letter of February 23, 1988 alleges ongoing and threatened injury to the public and environment as a result of contamination of the entire forty acre Site. These claims can aptly be characterized as alleging property damage for which VGS is liable.

■■■ On the basis of the foregoing analysis, it is obvious that the claims giving rise to this litigation are such as to trigger the company's duty to defend. However, defendants insist that providing timely notice is a condition precedent to coverage and have cited a long list of cases beginning with *Houran*, 109 Vt. 258, 195 A. 253 (1938) [7] in support of this position. Plaintiffs have argued in response that Vermont law has evolved from the strict construction of *Houran* to a more modern principle that now requires an insurer to show prejudice before denying coverage on the basis of late notice.

This court has looked at the law surrounding this debate and has found nothing to cause it to conclude that Vermont law has abandoned the basic tenets of *Houran* and its progeny. However, it is also clear to the court that the concept of excusable delay discussed in *Houran* [8] may be within this plaintiff's reach. Whether circumstances in this case might excuse VGS's delay is a fact-specific inquiry which is beyond the scope of the present motion. This issue accordingly awaits future resolution.

In the meantime however the question of whether the defendant USF & G has a duty to defend *is* before the court. While the court agrees with the proposition that if VGS cannot prove timely notice its coverage will be forfeited without regard to prejudice, that does not resolve the pending motion. At this juncture the court is in no position to rule as a matter of law that no coverage will be available when the issue is fully developed. In other words, a possibil-

---

7. Defendants cite the following language in *Houran:*
> [W]here, by the terms of the insurance contract, a specified notice of accident, given by or on behalf of the insured to the insurer, is made a condition precedent to liability on the part of the latter, the failure to do so will release the insurer from the obligations imposed by the contract, although no prejudice may have resulted.

*Houran*, 190 Vt. at 273–74, 195 A. 253.

8. The court in *Houran* stated:
> There may be circumstances that will explain or excuse a delay in giving the notice required by a policy of insurance, and show it to be reasonably prompt.

*Houran* at 268, 195 A. 253 (citations omitted).

ity of coverage exists until such time as the notice issue is resolved, even though notice is a condition precedent to coverage.

Accordingly, despite *Houran*, this court holds that the defendant USF & G has a present duty to defend and must reimburse costs of defense already incurred by VGS subsequent to the time notice of a claim was given.

The parties sought, and have obtained today, resolution of the duty to defend issue distinct from the duty to indemnify. This is not the usual course because courts generally have addressed the duty to defend and the duty to indemnify simultaneously. *See, Garneau* at 133; *Cooperative Fire Ins. Assn. of Vermont v. Gray,* — Vt. ——, 599 A.2d 360, 362 (1991). This has put the court in the unusual position of determining an issue of great import (the costs associated with the past and any future defense of VGS are assumed substantial) without resolving what all parties acknowledge to be the central issue to this litigation—whether VGS has forfeited coverage because it did not provide its insurers with timely notice as required by its policies. In addition, the court deems it appropriate to clarify certain other issues which have not been reached in this opinion.

First is the question of the timing of the 'occurrence' which triggers coverage under plaintiff's policies. In cases involving exposure to toxic substances, courts have used five different rules to determine if the occurrence was triggered during the policy period. These rules were discussed by Judge Coffrin in *Village of Morrisville, supra* at 730. For purposes of this decision the trigger issue need not be resolved because all parties are agreed that some trigger did occur during the period covered by USF & G. Determination of when the trigger occurred and what trigger rule to apply awaits future treatment.

Second, it is not necessary at this juncture to decide at which particular moment plaintiff's duty to notify its insurers of the EPA claim matured. As stated in the facts above, plaintiff received a letter dated March 5, 1982 from the EPA notifying VGS of its potential responsibility for the cost of cleaning up the Site. Defendants argue that this letter constituted a suit or claim and triggered VGS's responsibility to provide them with notice. Plaintiff denies that the duty to notify arose on receipt of the 1982 letter. Plaintiff contends that it was reasonable to determine at that time and afterwards that the 1982 letter and attendant circumstances did not constitute a suit or claim and thus the duty to notify did not arise until the May 4, 1987 letter. Any decision on that issue is withheld until it is properly before the court.

## IV. CONCLUSION

An insurer's duty to defend arises when there is a possibility that a third-party claim against an insured will fall within the insured's coverage. Until the insurer can prove that a claim is entirely excluded from coverage, or, in this case, the insured fails to prove that it has satisfied the conditions of the policy, the insurer is required to provide the insured with a defense against the third-party claim. EPA's claims against VGS are possibly within the scope of the USF & G policies and therefore USF & G must provide VGS with a defense to those claims. Although timely notice is a condition precedent to coverage, that issue cannot be resolved in this case at this juncture. In the meantime, the possibility of coverage does exist and the insurer must provide a defense.

Plaintiff's Motion for Partial Summary Judgment against defendant USF & G (Paper # 77) is hereby GRANTED.