TOWN OF WINDSOR, VERMONT

v.

The HARTFORD ACCIDENT & INDEMNITY COMPANY.

Civ. A. No. 5:94–CV–209.

United States District Court, D. Vermont.

April 28, 1995.

Thomas M. Rounds, Davis & Rounds, P.C., Windsor, VT, for plaintiff.

William H. Quinn, Pierson, Wadhams, Quinn & Yates, Burlington, VT, for defendant.

## OPINION AND ORDER

BILLINGS, Senior District Judge.

The following motions bring this matter to the Court's attention:

1. Plaintiff's Motion For Partial Summary Judgment dated October 20, 1994.

2. Plaintiff's Motion For Summary Judgment dated January 26, 1995.

3. Defendant's Motion For Summary Judgment dated January 19, 1995.

4. Plaintiff's Motion to Strike dated December 22, 1994.

5. Defendant's Motion to Strike dated December 15, 1994.

The Court will address each motion seriatim.

## I. FACTUAL BACKGROUND

This is a dispute over eleven Comprehensive General Liability Policies ("the CGL policies" or "the policies") that Defendant Hartford Accident and Indemnity company ("the Hartford") issued to Plaintiff the Town of Windsor, Vermont ("the Town" or "Windsor") between July 1, 1976 and April 1, 1987. The Town alleges that the Hartford violated its obligations under the CGL policies when it refused to defend and indemnify the Town against the Vermont Agency of Natural Resources ("ANR") in matters arising out of the disposal of hazardous substances at a Town landfill on Trafton Hoisington Farm in Windsor. The Town seeks both a declaration that the Hartford is obligated to defend and indemnify Windsor under the policies and damages for the Hartford's failure to do so. The Hartford denies that it is required to either defend or indemnify the Town under the policies.

The Town maintained a landfill on 17 acres of the Trafton Hoisington Farm ("the THF Site") from 1949 to 1971. In the early 1980s, the United States Environmental Protection Agency ("EPA") began to take an interest in the THF Site. In 1983 the EPA hired a private contractor, NUS Corporation ("NUS"), to conduct a Preliminary Assessment of the site. This study apparently proved inconclusive. NUS completed its final Site Investigation in 1986, recommending

that the Town study the soil contamination further and that it regularly monitor area wells that supplied drinking water.

After the 1983 study was completed, the State of Vermont and the Town exchanged several communications concerning the status of the THF Site. On November 22, 1985, the Vermont Agency of Environmental Conservation (the predecessor of the ANR) notified the Town of the "reported presence of hazardous waste which could potentially pose a threat to human health and the environment." *See* Defendant's Exhibit E, letter form Ruth Einstein, AEC Hazardous Material Specialist to Ruth H. Carney, Windsor Town Manager. In a letter dated August 15, 1988, the Hazardous Materials Management Division ("HMMD") of the ANR reminded Windsor of the presence of a potential hazardous waste site within the town, and included with the notice a copy of NUS' Preliminary Assessment of the THF Site. The letter explained that the Preliminary Assessment was "the first step in the site assessment process set forth by the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), commonly known as Superfund." *See* Defendant's Exhibit Q, letter from ANR to Gloria Tansey, Windsor Town Clerk.

On June 11, 1993, HMMD notified the Town that it was a potentially responsible party ("PRP") for the pollution at the THF Site.[1] In a July 28, 1993 letter to the Town, HMMD confirmed a meeting of all PRPs in Waterbury, Vermont.[2] The meeting between HMMD and the PRPs took place as scheduled on August 31, 1993. On May 18, 1994, the Town and Goodyear entered into the Trafton Hoisington Farm Site Cooperation Agreement in which they voluntarily promised to perform the site investigation as required by HMMD and EPA. This investigation is currently in progress.

On November 12, 1993, the Town notified the Hartford that there were problems relat-

ed to the THF Site and that Windsor had been named as a PRP. The Town asked the Hartford to defend and indemnify it under the terms of the eleven CGL Policies that the Hartford issued to Windsor between July 1, 1976 and April 1, 1987. The Hartford denied coverage in a letter dated April 6, 1994, and this suit followed.

In its Motion for Partial Summary Judgment, the Town contends that the policies require the Hartford to defend Windsor in the matters surrounding the THF Site. Similarly, in its Motion For Summary Judgment, the Town maintains that the Hartford has a duty under the policies to indemnify Windsor for the expenses it incurs as a result of the dispute. The Hartford denies all of these allegations, arguing that it need neither defend nor indemnify the Town under the policies.

## II. MOTIONS FOR SUMMARY JUDGMENT

### A. SUMMARY JUDGMENT STANDARD OF REVIEW

■ Summary judgment is appropriate when the Court finds that there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The party opposing summary judgment may not rest on its pleading but must present "significant probative evidence" demonstrating that a genuine dispute of material fact exists, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The Court must view these materials in the light most favorable to the non-movant, drawing all reasonable inferences in the non-movant's favor. *Id.* at 255, 106 S.Ct. at 2513–14.

1. On February 2, 1993, HMMD had notified the Goodyear Rubber and Tire Company ("Goodyear") that it, too, was a PRP for the THF Site.

2. Along with its July 28 letter to Windsor, HMMD enclosed a copy of a letter it had sent to

Goodyear on May 28, 1993. In the May 28 letter, HMMD requested Goodyear, in conjunction with the other PRPs, to conduct an investigation of the THF Site as a preliminary step before EPA conducted a Site Investigation of its own.

## B. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DUTY TO DEFEND

In its Motion For Partial Summary Judgment, the Town seeks a declaratory judgment that the policies require the Hartford to defend Windsor in the THF Site matter. The Town also seeks monetary damages, including interest and attorney's fees, for the costs that it has already incurred as a result of defending itself in the HMMD investigation. The Hartford denies that the policies give rise to a duty to defend the Town in the THF Site controversy.

■ The parties agree that Vermont law applies to this case. Under Vermont law, an "insurer's duty to defend is independent of and broader than its duty to indemnify." *Vermont Gas Sys. v. USF & G*, 805 F.Supp. 227, 231 (D.Vt.1992). *See also State v. Glens Falls Ins. Co.*, 132 Vt. 97, 99, 315 A.2d 257 (1974) ("(t)he duty of an insurer to enter and defend a case on behalf of its insured is broader than its obligations to respond in damages"). An insurer has a duty to defend an insured whenever there is a possibility that a claim falls within the coverage of an insurance policy. *Vermont Gas*, 805 F.Supp. at 231. *See also E.B. & A.C. Whiting Co. v. Hartford Fire Ins. Co.*, 838 F.Supp. 863, 867 (D.Vt.1993); *Garneau v. Curtis & Bedell, Inc.*, 158 Vt. 363, 610 A.2d 132, 134 (1992) ("the insurer has a duty to defend whenever it is clear that the claim with the insured might be of the type covered by the policy") (citations omitted). In order to escape the duty to defend, the burden is on the insurer to show that the claims against the insured are entirely excluded from coverage. *Vermont Gas*, 805 F.Supp. at 231; *Village of Morrisville Water & Light Dep't v. United States Fidelity & Guaranty Co.*, 775 F.Supp. 718, 733 (D.Vt.1991); *City of Burlington v. Glens Falls Ins. Co.*, 133 Vt. 423, 424, 340 A.2d 89 (1975). Thus, in the present case, the Hartford cannot avoid the duty to defend unless it demonstrates that there is no possibility that Windsor is entitled to coverage under the policies.

■ The Hartford first argues that Windsor is barred from any coverage because ANR's actions thus far do not constitute a "suit" within the meaning of the policies. Whether official action constitutes a suit within the meaning of a CGL policy such as the one in dispute here depends upon whether the official action is "sufficiently coercive and adversarial in nature." *Morrisville*, 775 F.Supp. at 725. In *Morrisville*, this Court held that a letter from the EPA notifying the insured of its status as a potentially responsible party under CERCLA was a "suit" within the meaning of the CGL policy at issue. *Id.* at 732–33.[3]

■ Under *Morrisville*, it is clear that the communications between ANR and the Town were sufficiently adversarial to constitute a "suit" within the meaning of the CGL policy. As early as 1988, the ANR informed the Town that the EPA had conducted a preliminary assessment of the THF Site which was the first step in the site assessment process under CERCLA. Five years later, on June 11, 1993, HMMD officially notified the Town that it was a PRP.[4] Given the extremely harsh penalties imposed by CERCLA, ANR's decision to identify Windsor as a PRP presented the Town with "no practical choice other than to voluntarily comply with the [ANR's] demands." *Id.* at 733. Consequently, the *Morrisville* decision controls this is-

---

**3.** The Hartford concedes that the Town correctly cites *Morrisville*, but claims that the case is inapplicable to the present action because ANR is pursuing its site investigation under Vermont law rather than CERCLA. The Court rejects this argument. The communications between ANR and the Town clearly indicate that all of the PRPs are faced with potential Superfund liability and that ANR is cooperating with EPA in the investigation pursuant to CERCLA. In addition, the EPA has already investigated the THF Site pursuant to CERCLA and plans to do so again as part of its Site Investigation.

**4.** The Hartford argues that the communications between ANR and the Town were not sufficiently coercive to constitute a "suit." This Court's decision in *Morrisville* makes that argument untenable. In any event, the most that can be said of the Hartford's position is that it simply interprets the language of the letters differently than the Town does. The Town's interpretation is indisputably a reasonable one as well, and this is sufficient to establish the possibility of coverage which gives rise to the duty to defend under Vermont law.

sue, and we must find that ANR's communications with the Town were sufficiently coercive and adversarial to constitute a "suit" within the meaning of the CGL policy.

■■■■ The Hartford next argues that the Town is not entitled to coverage because the Town failed to provide the Hartford with timely notice of the potential hazardous waste problems at the THF Site. It is undisputed that the insurance policy at issue in this case contains a valid notice requirement.[5] In Vermont, compliance with the notice provision of an insurance contract is a condition precedent to establishing the liability of the insurer under the policy. *Nelson v. Travelers Ins. Co.*, 113 Vt. 86, 98, 30 A.2d 75 (1943) (*citing Houran v. Preferred Accid. Ins. Co. of New York*, 109 Vt. 258, 273, 195 A. 253 (1938)); *Ziman v. Employers Fire Ins. Co.*, 493 F.2d 196, 199 (2d Cir.1974) (applying Vermont law) (*citing Houran*, 109 Vt. at 272, 195 A. 253). An insured's duty to notify the insurer of a potential claim arises with the advent of circumstances calculated to instill in the reasonable person a belief in the possibility of an impending claim. *Glens Falls*, 133 Vt. at 447, 340 A.2d 89. This typically occurs "when a public authority has assumed an adversarial posture toward [the insured] and ... disregard of the [public authority's] demands may result in the loss of substantial rights." *Green Mountain Power Corp. v. Certain Underwriter's at Lloyd's, London*, No. 2:91–385, slip op. at 9 (D.Vt. Aug. 29, 1994) (Neidermeier, Mag.) (*citing Avondale Indus., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1206 (2d Cir.1989), *cert. denied*, 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990)).[6]

■■■■ As indicated above, there were a series of communications between ANR and the Town between 1985 and 1993. A reasonable jury could find that the relationship between the ANR and the Town became an adversarial one after virtually any one of these communications. Depending upon

when it found that the relationship became adversarial, a reasonable jury might also find that the Town acted in a timely manner when it provided the Hartford with notice of the THF Site situation on November 12, 1993. It is therefore possible that the rules regarding timely notice will not bar the Town from coverage.

As the preceding discussion indicates, the Hartford has failed to carry its burden of showing that genuine issues of material fact exist as to its duty to defend the Town over the THF Site. It is at least possible that this is a "suit" within the meaning of the policies and that the Town provided the Hartford with timely notice of the pollution problems at the THF Site. Because there is a possibility that the Town is entitled to coverage under the policies, the Court finds that the Hartford has a present duty to provide a defense for the Town in matters related to the THF Site. Consequently, the Town's Motion For Partial Summary Judgment is hereby GRANTED. The Court ORDERS the Hartford to reimburse the Town for the costs of defense that the Town incurred after it gave notice of the claim to the Hartford on November 12, 1993.

## C. CROSS–MOTIONS FOR SUMMARY JUDGMENT ON DUTY TO INDEMNIFY

The Hartford has filed a Motion For Summary Judgment arguing that it has no legal obligation to indemnify Windsor for any expenses incurred as a result of the THF Site. In this Motion, the Hartford argues that it is entitled to judgment as a matter of law because Windsor violated the insurance contract by failing to provide the Hartford with timely notice of the potential liability created by the THF Site. Windsor has filed a Cross-motion for Summary Judgment in which it takes the opposite position, contending that it provided the Hartford with notice that was timely as a matter of law.

---

5.  The policies required that Windsor provide notice to the Hartford "as soon as practicable" after a covered occurrence, or "immediately" after a claim was made or a suit was brought.

6.  Although the *Avondale* court construed New York law, this Court has previously observed that Vermont and New York law are very similar on the question of when an insured must provide notice to its insurer. *Vermont Gas*, 805 F.Supp. at 231 n. 6.

■ The Court's analysis with respect to the Cross–Motions For Summary Judgment on the duty to indemnify is quite different from our analysis under the Plaintiff's Motion For Partial Summary Judgment on the duty to defend. In order to prevail on the duty to defend, the Defendant had the burden of showing that there was no possibility that Windsor's claims could be covered by the insurance contract. *See, e.g., E.B. & A.C. Whiting, supra.* However, as we noted previously, the duty to defend is more broad than the duty to indemnify. *See, e.g., Vermont Gas, supra.* With respect to indemnification, it is the insured who bears the burden of proving that the claimed loss is covered by the disputed insurance policy, and that the insurer has the duty to indemnify the insured for the loss. *See* John Allen Applemar., *Insurance Law and Practice* § 12094 at 24 (1941) ("one suing on a liability policy must establish that the loss fell within its terms"). Thus, in the present case, Windsor has the burden of proving that it provided the Hartford with timely notice of the occurrence or claim for which it seeks coverage. *See Ziman*, 493 F.2d at 199; *Glens Falls*, 133 Vt. at 446–47, 340 A.2d 89.

■ As we indicated in part B, it is far from certain when an adversarial relationship developed between ANR and Windsor such that the Town should have known that a claim was forthcoming. It may be, as Windsor contends, that the impending claim did not become apparent until August 31, 1993. On that date the ANR informed Windsor that they viewed the Town as a PRP and that severe penalties were possible unless Windsor proceeded with an investigation of the site. Thus, a reasonable jury might find that this was the Town's first adversarial confrontation with a public body over the THF Site, and that as a result Windsor's duty to notify the Hartford of the potential claim arising out of the dispute did not arise until August 31, 1993. A reasonable jury might further find that Windsor acted in a timely manner when it notified the Hartford of the possible THF Site claim 73 days later, on November 12, 1993.

On the other hand, a reasonable jury could find that the interactions between the State and Windsor over the THF Site had developed into an adversarial relationship prior to August 31, 1993. For example, the November 22, 1985, letter from the Vermont Agency of Environmental Conservation could be viewed by a jury as written notice to Windsor of the presence at the THF Site of "hazardous waste which could potentially pose a threat to human health and the environment." A jury might reach a similar conclusion with respect to the letter dated August 15, 1988, in which the HMMD reminded Windsor of the presence of a potential hazardous waste site within the Town and explained that the Preliminary Assessment was "the first step in the site assessment process set forth by the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), commonly known as Superfund." Based on these and other contacts between the State and Windsor, a reasonable jury could find that Windsor should have anticipated a claim related to the THF Site before November 12, 1993. As a result, a reasonable jury could also find that Windsor's duty to notify the Hartford of the potential claim arose before November 12, 1993, and that its failure to provide notification before that date violated the timely notice requirement of the insurance policy.

As the preceding discussion makes clear, there are genuine factual disputes pertaining to whether Windsor provided the Hartford with timely notice of the possible liability created by the THF Site. This dispute is obviously material since Windsor's claim for coverage under the policy will fail unless timely notice was provided. Because a genuine issue of material fact exists, Defendant Hartford's Motion For Summary Judgment is hereby DENIED. For the same reason, the Court hereby DENIES Plaintiff Town of Windsor's Cross–Motion For Summary Judgment.[7]

---

7. Plaintiff has also moved for summary judgment on the grounds that: (1) the ANR suit constitutes a claim for environmental damage that is covered by the term "property damage" within the disputed insurance policies; and (2) that the policies either contain no pollution exclusions or, in the alternative, that any pollution exclusions that do exist are unenforceable because they vio-

### III. MOTIONS TO STRIKE

Both Plaintiff and Defendant have filed Motions to Strike portions of the other party's Local Rule 5(c)(1) Statement of Undisputed Material Facts. Each party's Motion to Strike is essentially a disagreement with the veracity of the facts contained in the opposing party's 5(c)(1) Statement. As we have indicated in this Opinion, however, it is now obvious that factual disagreements exist and that summary judgment is consequently inappropriate. As a result, there will be ample time during the discovery process for the parties to marshall evidence to support their own versions of the facts. Identifying the correct version of the facts is a responsibility of the factfinder at trial, not one for the Court during the early stages of discovery. For these reasons the Court DENIES both Plaintiff's Motion to Strike and Defendant's Motion to Strike.

### IV. CONCLUSION

Based upon the foregoing, the Court hereby:

1. GRANTS Plaintiff's Motion For Partial Summary Judgment dated October 20, 1994, and ORDERS the Hartford to reimburse the Town for the costs of defense that the Town incurred after it gave notice of the claim to the Hartford on November 12, 1993.

2. DENIES Plaintiff's Motion For Summary Judgment dated January 26, 1995.

3. DENIES Defendant's Motion For Summary Judgment dated January 19, 1995.

4. DENIES Plaintiff's Motion to Strike dated December 22, 1994.

5. DENIES Defendant's Motion to Strike dated December 15, 1994.

SO ORDERED.

late the applicable Vermont Department of Business & Insurance regulations. We need not reach these arguments, however, because we disposed of Plaintiff's Cross–Motion For Summary Judgment on the ground that there are disputed issues of material fact concerning the timeliness of notice. Nevertheless, the Court observes that in this District it is beyond dispute that environmental clean-up costs assessed under CERCLA are "damages" within the meaning of CGL policies such as the one in dispute here. *See, e.g., Vermont Gas,* 805 F.Supp. at 232; *Morrisville,* 775 F.Supp. at 725; *Gerrish Corp. v. Universal Underwriters Ins. Co.,* 754 F.Supp. 358, 366–67 (D.Vt.1990).