**VERMONT MOBILE HOME OWNERS' ASSOCIATION, INC., Louise Beaudoin, et al., Plaintiffs,**

v.

**Nicole and Andre LAPIERRE, Lapierre Enterprises, Inc. Brault's Mobile Home, Inc., Latham Trailer Sales, Inc., and People's Trust Co., Defendants.**

No. 97–CV–209.

United States District Court, D. Vermont.

April 17, 2000.

---

Stephen S. Norman, Vermont Legal Aid, Inc., Burlington, VT, Peter Francis Welch, Welch, Graham & Manby, White River Jct., VT, John Davis Shullenberger, Jericho, VT, Mark A. Schneider, Plattsburgh, NY, for Plaintiffs.

Edwin L. Hobson, Jr., Burlington, VT, Robert B. Hemley, Gravel and Shea, Burlington, VT, for Defendants.

## OPINION AND ORDER

SESSIONS, District Judge.

In this class action, Plaintiffs Vermont Mobile Home Owners Association ("VMHOA"), et al, allege that Defendants Nicole and Andre Lapierre ("The Lapierres"), Brault's Mobile Home, Inc., ("Brault"), Latham Trailer Sales, Inc. ("Latham"), and People's Trust Co. of St. Albans ("People's Trust") defrauded mobile home owners and violated the Sherman Antitrust Act, the Vermont Mobile Home Park Act, 10 V.S.A. § 6238, and the Vermont Consumer Fraud Act, 9 V.S.A. § 2461. VMHOA moves for summary judgment on liability and damages on their claims pursuant to Vermont's Mobile Home Park Act and the Consumer Fraud Act (paper 201). Defendant Lapierres filed a Motion for Summary Judgment and Request to Take View (paper 204). Defendant People's Trust has also moved for

Summary Judgment on Federal Antitrust and State Consumer Fraud Claims (paper 209), and for dismissal of the Vermont Consumer Fraud Act Claim (paper 208). Defendant Latham moves for dismissal for failure to state a claim upon which relief can be granted (paper 195), to set aside entry of default (paper 212), and for summary judgment (paper 193).

For the following reasons, Plaintiffs' Motion for Summary Judgment (paper 201) is DENIED, Latham's Motion to Set Aside Entry of Default (paper 212) is GRANTED, Latham's Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) (paper 195) is GRANTED, and Latham's Motion for Summary Judgment is DENIED as moot (paper 193). Defendant Lapierre's Motion for Summary Judgment and Request to Take View (paper 204) is DENIED. Defendant People's Trust's Motion for Summary Judgment on Federal Antitrust and State Consumer Fraud Claims (paper 209) is DENIED, and their Motion to Dismiss the Vermont Consumer Fraud Act Claim (paper 208) is DENIED.

## I. Summary Judgment Motions

### A. Standards

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir.1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The movant bears the burden of showing that no genuine issue of material fact exists. *Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1223 (2d. Cir.1994) (citing *Heyman v. Commerce and Industry Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975)). All ambiguities must be resolved and all inferences from the facts drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In sum, "[t]he court must draw all reasonable inference in favor of the non-moving party and only grant summary judgment for the moving party if no reasonable trier of fact could find in favor of the non-moving party." *Vermont Gas Systems, Inc. v. United States Fidelity & Guar. Co.*, 805 F.Supp. 227, 231 (D.Vt.1992) *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. VMHOA's Motion for Summary Judgment

The members of VMHOA are a group of mobile home owners who leased mobile home lots in Town & Country Estates ("Town & Country") from the owners Nicole and Andre Lapierre. VMHOA members allege, *inter alia*, that they were forced to purchase mobile homes which were sold at a mark-up, and that the mark-up constituted an illegal entrance fee under 10 V.S.A. § 6238 of the Mobile Home Parks Act. VMHOA's allegations suggest the involvement of all named Defendants. Defendants respond that the mark-up was a reasonable method of covering maintenance costs and deriving a profit, and does not constitute an entrance fee.

The following facts are construed most favorably to the Defendants. Mobile homes were sold to members of VMHOA who sought to live at Town & Country, either directly through the Lapierres or through a dealership with whom the Lapierres had a financial relationship. When mobile homes were purchased through dealerships, the dealership would pay the Lapierres $12,000–$15,000 at each sale. The Lapierres made a similar profit on each mobile homes they sold directly to members of VMHOA. While VMHOA members contend they were restricted to purchases through these two avenues, Nicole Lapierre testified that a mobile home would be accepted on her land from any dealer, "provided that they would pay [her] the agreed amount."

The Mobile Home Park Act includes provisions which protect the mobile home-

owner, including a prohibition on charging of entrance fees. Section 6328 of 10 Vermont Statutes Annotated reads:

10 V.S.A § 6238 Charges and Fees

(a) A prospective resident or other person may not be charged an entrance fee for the privilege of leasing or occupying a mobile home lot. A reasonable charge for the fair value of services performed in placing a mobile home on a lot shall not be considered an entrance fee.

Plaintiffs argue that the alleged amount over the fair market value received by the Lapierres in each of the sales constitutes an entrance fee as defined in 10 V.S.A § 6238.

Defendants dispute VMHOA's assessment of the fair market price on the homes in this case. Defendant Brault specifically offers evidence that profits never exceeded a margin of fifteen percent, and dipped as low as eight percent on certain sales. Defendants further contend that the amount, if any, over the fair market value for the mobile homes is reasonably accounted for in a variety of manners: costs of installing the home, customary setup charges, water and sewer hookups, and ordinary industry markups which allow for reasonable profits. In addition, the Lapierres offer that the markups were often offset by rebates.

▆ While the Lapierres are barred from charging entrance fees pursuant to 10 V.S.A § 6238, they are certainly permitted to obtain a profit from their business, and at the very least offset the costs of operating a mobile park home. Whether the alleged excess charged is within the fair bounds of industry profit-making behavior or can be fairly characterized as a entrance fee is a material fact in dispute. Thus, summary judgment in favor of VMHOA on liability and damages on the state law entrance fee claim is denied.

VMHOA's second claim involves The Consumer Fraud Act, 9 V.S.A. §§ 2451 et seq., which was enacted "to complement the enforcement of federal statutes and decisions governing unfair methods of competition and unfair or deceptive acts or practices in order to protect the public,

and to encourage fair and honest competition." 9 V.S.A. § 2451. The act declares that "(a) [u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful." 9 V.S.A. § 2453. In interpreting this statute, this Court is to be guided by Federal Trade Commission and federal court precedent. 9 V.S.A. § 2453(b). "The Commission has described the factors it considers in determining whether a practice that is neither in violation of the antitrust laws nor deceptive is nonetheless unfair:"

"(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)."

*F.T.C. v. Sperry and Hutchinson Co.*, 405 U.S. 233, 244 n. 5, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972) (citations omitted).

VMHOA argues that the Mobile Home Park Act prohibition on entrance fees, and the alleged harm to homeowners from investing in park development without a guarantee of long-term occupancy, satisfies the criteria laid out by the Federal Trade Commission for unfair practices. However, as discussed supra, insufficient evidence exists for ascribing the "entrance fee" label to the Lapierres' profits at the summary judgment stage. Furthermore, the Defendants in this case have sufficiently rebutted for summary judgment purposes the characterization of their profits as anything other than reasonable profits in the mobile home industry. A genuine issue of material fact exists as to whether VMHOA members have invested in park development to their disadvantage, or in a way that renders Defendants' profit mak-

ing strategies "unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." Accordingly, summary judgment on the Consumer Fraud Claim is denied.

## C. People's Trust and Lapierres' Motions for Summary Judgment

VMHOA makes three major claims in this case which alleges illegal conduct by all Defendants: 1) Defendants have violated the anti-tying provisions of the Sherman Antitrust Act by requiring purchase of a new mobile home as a condition of first occupancy, 2) this same conduct violates the Vermont Consumer Fraud Act, 9 V.S.A. § 2461, and 3) the required purchase of mobile homes at a marked-up rate constitutes an illegal entrance fee under 10 V.S.A. § 6238 of the Mobile Home Park Act. The Lapierres and People's Trust assert that each claim is lacking in elements essential to surviving summary judgment. Defendants claim that VMHOA will not be able to prove that the tying violations of the Sherman Act or the Vermont Consumer Fraud Act occurred, or that the markup on the mobile homes amounted to an entrance fee. As to each of these assertions, issues of material fact are disputed by the parties. Thus, summary judgment is inappropriate.

The following facts are construed most favorably to VMHOA. In order to lease a lot in Town & Country, members of VMHOA allege they were required to buy a mobile home from either the Lapierres or from a designated dealer with whom the Lapierres had a share agreement. Whether they purchased their mobile home from the Lapierres or from one of the designated dealers, VMHOA members allegedly paid several thousand dollars above the fair market price. In the cases where VMHOA members purchased from outside dealers, a payment of $12,000 or $15,000 was made by the dealer to the Lapierres by check. When VMHOA members purchased mobile homes directly from the Lapierres, similar prices for homes were charged. Some members of VMHOA allege they felt they had no choice but to purchase through one of the avenues provided by the Lapierres.

### 1. Tying under Sherman and Vermont Consumer Fraud Acts

The conduct in this case allegedly violates both the Vermont Consumer Fraud Act and the Sherman Antitrust Act, the former providing the same protections as the latter. Thus, the following analysis resolves summary judgment issues under both federal and state laws.

■ VMHOA's standing to sue has been called into question by People's Trust. People's Trust argues that the members of VMHOA have suffered no injury, based on the theory that they paid a fair market value for their mobile homes. People's Trust cites alleged inaccurate appraisals of the homes based on faulty use of the "N.A.D.A. book values." They further claim that one home in this case was sold for under the market value determined by VMHOA's own appraiser. As the parties appear to disagree about the proper interpretation of the N.A.D.A. values, the fair market values of the homes remains a genuine issue of material fact. Since the very facts regarding injury are disputed and as yet undetermined, summary judgment cannot be granted on the basis of VMHOA's lack of standing.

"A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product.' " *Yentsch v. Texaco, Inc.*, 630 F.2d 46, 56–57 (2d Cir. 1980), citing *Northern Pacific Ry. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958). In *Yentsch*, the Second Circuit provided the following five-part test for antitrust tying:

> The law of tying requires proof of five specific elements: first, a tying and a tied product; second, evidence of actual coercion by the seller that in fact forced the buyer to accept the tied product; third, sufficient economic power in the tying product market to coerce purchaser acceptance of the tied product;

fourth, anticompetitive effects in the tied market; and fifth, involvement of a "not insubstantial" amount of interstate commerce in the tied product market.

(Citations omitted.)

■ To survive summary judgment, VMHOA must present genuine issue of material facts as to each of part of this test. In determining the appropriateness of summary judgment against VMHOA at this stage, this Court must apply the above test to the facts in the light most favorable to VMHOA. In VMHOA's Opposition to Defendants' Motion for Summary Judgment, Plaintiffs directly address the coercion aspect of the five part *Yentsch* test, and tangentially address the remaining prongs. Despite Plaintiff's lack of direct analysis on several prongs of the test, Defendants have not met their burden of showing that there are no genuine issue of material fact remaining with regard to any element of the above test. Thus, Defendants' summary judgment motions must fail.

First, VMHOA must show a tying and a tied product. Defendants' assertions that combined home sales and lot rentals is a longstanding and accepted practice in the market is not dispositive of the tying question. "Doubtless, long-tolerated trade arrangements acquire no vested immunity under the Sherman Act; no prescriptive rights accrue by the prosecutor's delay. That consideration, however, is not wholly irrelevant when monopolistic purpose rather than effect remains to be gauged." *Times–Picayune Pub. Co. v. United States*, 345 U.S. 594. 621. 623–4, 73 S.Ct. 872, 97 L.Ed. 1277 (1953) (citations omitted). Whether a mobile home and a rented lot are two products for tying purposes, then, is a disputed material fact relating to the relevant market and the contractual agreement.

Next, VMHOA must show "evidence of actual coercion by the seller that in fact forced the buyer to accept the tied product." Allegations of actual coercion surrounding the purchase agreements have been raised by members of VMHOA.

Several Plaintiffs directly contradict the Lapierre's assertion that there was free choice in choosing a mobile home dealer. This contention presents a genuine issue of material fact.

Third, VMHOA must show "sufficient economic power in the tying product market to coerce purchaser acceptance of the tied product." The parties differ regarding the characterization of Lapierres' scope of power and business dealings in the market. While the Lapierres' contend that the brevity of their involvement in the sale of mobile homes precludes monopoly, VMHOA asserts that the paucity of rental locations gave the Lapierres significant market power in both site rentals and home sales. Thus, the sufficiency of the Lapierres' economic power in the market remains a genuine issue of material fact.

Fourth, VMHOA must evince "anticompetitive effects in the tied market." A determination of whether the alleged tying created anticompetitive effects in the market can only be determined through close analysis of the mobile home and lot rental markets in Vermont. VMHOA contends that while mobile homes are available at numerous dealerships in Vermont, the Lapierres' control over the only available rental spaces in the early to mid–1990s provided ample leverage over other dealerships.

Finally, VMHOA must assert Defendants' "involvement of a 'not insubstantial' amount of interstate commerce in the tied product market." This appears to be the area of VMHOA's Opposition to Summary Judgment (as well as their Third Amended Complaint) which received the least amount of attention. However, the Defendants have shown an equal level of inattention to the same prong of the *Yentsch* test, leaving the Court with little basis for determining whether a genuine issue of material facts exists around the issue of interstate commerce. In *International Salt Co. v. United States*, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947), the Supreme Court found that roughly $50,000 of interstate

commerce was deemed sufficient to pass the "not insubstantial" test. Defendants have made no assertion that the commerce involved in their mobile park business is exclusively, or even primarily intrastate. Given the nature of the production and distribution of mobile homes, it is implausible that the industry participants could avoid extensive dealings in interstate commerce. Since several of the mobile homes sold by the Lapierres or the mobile home dealers with which they had a share agreement were worth nearly $50,000 each, VMHOA has proffered a genuine issue of material facts regarding Defendants "involvement of a 'not insubstantial' amount of interstate commerce in the tied product market." Thus, VMHOA has met the threshold requirement of presenting a genuine issue of material fact under each prong of the *Yentsch* test, precluding summary judgment in favor of the Defendants.

### 2. Entrance Fees

Summary judgment is equally inappropriate on the entrance fee claim. Defendants assert the fact that the Mobile Parks Act "is silent on the tying issue, neither expressly allowing nor forbidding it" *Russell v. Atkins,* 165 Vt. 176, 679 A.2d 333 (1996) as conclusory on this issue. However, *Russell v. Atkins* does not resolve whether tying involving markups, when inflated beyond a reasonable point, constitutes inadvertent entrance fees. In an attempt to resolve this issue, the parties offer widely differing versions of what constitutes an impermissibly inflated markup, ranging from no profit to profits nearly forty percent. Thus, whether the markups qualify as "commissions," "subsidies," "entrance fees," or profits at all is ultimately a genuine issue of material fact, and summary judgment in favor of the Defendants on the remaining state law claim must be denied.

### II. Defendant Lapierre's Request to Take View

In support of their summary judgment motion, the Lapierres have asked the Court to take view of Town & Country Estates, so that the Court can "view exactly what the Plaintiffs received, to dispel any lingering suspicion that the Court may have that it might admit the unsupported testimony of the Plaintiffs that they were overcharged." The Court is not in a position to appraise the value of the homes and plots at Town & Country. Furthermore, the very fact that Defendant believes that a view of the plots would assist the Court reiterates that there are genuine issues of material fact present in this case. Thus, the Court does not believe a view of Town & Country is appropriate or necessary.[1]

### III. Latham's Motion to Set Aside Entry of Default

Latham's answer to VMHOA's Third Amended Complaint was received on September 29, 1999, one day after the filing deadline. However, Latham had contact with the Court on the due date, September 28th, and mailed the answer with the understanding that default would not be entered if it arrived the next day. Nonetheless, default was entered.

Latham had responded to the earlier complaints in a timely fashion. None of the material allegations against Latham have changed in subsequent pleadings, and all Latham's answers and denials have been previously made.

The entry of default can be set aside for good cause, pursuant to Fed.R.Civ.P. 55(c). In this matter, good cause has been demonstrated by Latham, and thus the motion to set aside entry of default (paper 212) is granted.

### IV. Latham's Motion to Dismiss

In Plaintiffs' Third Amended Complaint, no allegations are made against La-

---

1. The Lapierres' have also requested an oral argument in order to "narrow and focus the issues." As the Court finds this unnecessary, the request is denied.

tham. Latham is listed as a defendant in the heading, and is alleged to be a defendant in paragraph eight. However, no further allegations are listed. Plaintiffs' Opposition to the Motion to Dismiss argues that the prior two complaints listed individual allegations against Latham, but were deleted in the interest of brevity. This argument holds little merit. In filing successive complaints, each amended complaint fully replaces the last complaint, such that any omitted allegations are withdrawn from the action.

Plaintiffs also argue that paragraph 15 of the Third Amended Complaint retains the "core allegation":

> As a condition of the lease of a lot, each individual plaintiff was required by the Lapierres to purchase their family's mobile home wether from the Lapierres' own retail sales business, or from a dealer that had agreed to pay the Lapierres sums from $10,000 to $15,000 derived from the sales transaction.

Given that more than one retail business has been named as a defendant in this action, the language of paragraph 15 does not put Latham on notice that it is one of the retail businesses alleged to have participated in this illegal business activity. Therefore, Defendant Latham's Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) must be granted.

### V. People's Trust Motion to Dismiss Consumer Fraud Claim

People's Trust contends that Plaintiff's Third Amended Complaint alleges derivative liability, and nothing more, against them with regard to the consumer fraud claim. As the Vermont Supreme Court has held that derivative liability for consumer fraud cannot be imposed "absent direct participation in the unfair or deceptive acts, direct aid to the actor, or a principal/agent relationship," *State v. Stedman*, 149 Vt. 594, 598, 547 A.2d 1333 (Vt. 1988), People's Trust argues that the consumer fraud claim must be dismissed under Fed.R.Civ.P. 12(b)(6).

Plaintiff's complaint does not characterize People's Trust's involvement in

the case as derivative. Rather, the complaint alleges at ¶¶ 13–15 that the loan to the Lapierres was specifically conditioned upon the Lapierres' receipt of $15,000 from mobile home dealers at each sale, and that $10,000 of this amount was immediately due to People's Trust upon the selling of a mobile home in Town & Country Estates. Thus, *Stedman* is not dispositive of this case, as the present allegations are far from analogous to the facts of *Stedman*.

In *Stedman*, the owner of a ski area, Goodman, was in the process of selling his property to Stedman, and Stedman began selling time-shares of that property to customers prior to the closing of the deal with Goodman. Goodman was told by Stedman that the customers' money was placed in escrow, when in fact Stedman squandered it. When the purchase fell through, Goodman was not held responsible for defrauding Stedman's customers, as his role in facilitating the fraud occurred without knowledge that the fraud was being perpetrated.

The Court recognizes that it is yet unclear whether the mobile home markups in this case constitute anything more than reasonable profits in the mobile home market. However, if they are found to be illegal, People's Trust's could be found to be more than indirectly involved with the Lapierre's fraudulent activity since they acted with knowledge of the markups. On those grounds, People's Trusts' Motion to Dismiss cannot be granted.

### VI. Order

For the reasons stated above, Plaintiffs' Motion for Summary Judgment for Liability and Damages on State Law Claims (paper 201) is DENIED. The Court GRANTS Latham's Motion to Set Aside Entry of Default (paper 212), and GRANTS Latham's Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted (paper 195). As the matter is resolved through the Motion to Dismiss, the court DENIES Latham's Mo-

tion for Summary Judgment as moot (paper 193). Defendant Lapierre's Motion for Summary Judgment and Request to Take View (paper 204) are DENIED. Defendant People's Trust's Motion for Summary Judgment on Federal Antitrust and State Consumer Fraud Claims (paper 209) is DENIED, and their Motion to Dismiss the Vermont Consumer Fraud Act Claim (paper 208) is DENIED.