Rockingham
No. 84-603

## RICHARD A. MOTTOLO

v.

## UNITED STATES FIDELITY & GUARANTY CO. & a.

August 16, 1985

*Stark & Peltonen P.A.*, of Manchester (*Rodney L. Stark* on the brief, and *John Peltonen* orally), for intervenor K. J. Quinn & Co., Inc.

*Wadleigh, Starr, Peters, Dunn & Chiesa P.A.*, of Manchester (*Theodore Wadleigh* on the brief and orally), for defendant United States Fidelity & Guaranty Co.

*Ouellette, Hallisey, Dibble & Tanguay P.A.*, of Dover (*Stephen H. Roberts* on the brief and orally), for defendant The Aetna Casualty & Surety Co.

KING, C.J.    This case comes before this court on appeal from a ruling by the Superior Court (*Gray*, J.) granting the defendants' motion to dismiss a petition for declaratory judgment filed by the plaintiff, Richard Mottolo. Intervenor K. J. Quinn & Co., Inc. (Quinn) has taken the appeal. We affirm.

Richard Mottolo, d/b/a Service Pumping and Drain Co. of Wakefield, Massachusetts, carried, from 1970 to 1979, insurance with liability coverage of $100,000 with defendant United States Fidelity & Guaranty Co. (USF&G) and excess coverage of $1,000,000 from 1977–79 with defendant Aetna Casualty & Surety Co. (Aetna). The USF&G policies were issued in Massachusetts with the coverage designated for Mottolo's Wakefield operation. No other locations were indicated. Where the Aetna policy was issued or what it contained is unknown. Both companies' policies included specific "pollution exclusions" and excluded coverage for damage to property in the care, custody or control of the insured.

In addition to his sewage pumping service, Mottolo ran a chemical disposal and storage operation. He buried some 1,500 barrels of chemical and residue waste produced both by Quinn and by Lewis Chemical Corporation. The dumping operation took place on property Mottolo owned in Raymond, New Hampshire, between 1975 and the end of 1978.

In April, 1979, the chemical dump was brought to the attention of the New Hampshire Water Supply and Pollution Control Commission, which investigated and took water samples. It was subsequently determined that toxic wastes were leaking from the site and that these wastes had contaminated the surface waters which drained through the property into a tributary of the Exeter River, which serves as the water supply for the town of Exeter. In May, Mottolo met with State officials, who informed him that the existence of the waste on his property constituted a nuisance and health hazard, and that he would bear both the responsibility and the costs for the removal of the barrels, and for the clean-up of the site. Mottolo took no action.

Subsequently, by writ returnable the first Tuesday of July, 1979, the State brought suit in superior court against Mottolo and Quinn, seeking both temporary and permanent injunctions and authority to enter upon Mottolo's land in Raymond in order to abate the nuisance.

In June, 1979, Mottolo through counsel made a demand upon Aetna to enter the litigation and defend to the limits of the policy coverage. No similar demand was made upon USF&G. Instead, in September, 1979, Mottolo visited his insurance agent in Massachusetts and added, by endorsement, liability coverage through

USF&G for the land located in Raymond. At that time he did not reveal to the insurer that he was being sued by the State for his activities on the Raymond property.

In April, 1982, by writ returnable on the first Tuesday of that month, Quinn, a co-defendant with Mottolo in the State's equity suit, initiated an indemnity action against Mottolo. (By writ returnable on July 1, 1983, the Lewis Chemical Corporation, since joined as a co-defendant with Mottolo in the July, 1979, State action, also began a similar indemnity action against Mottolo.)

On July 16, 1982, Mottolo brought a petition for declaratory judgment alleging *inter alia* that both USF&G and Aetna were bound to defend and indemnify him as to those claims brought against him by the State and Quinn. Both USF&G and Aetna filed motions to dismiss on the ground that Mottolo had not complied with the provisions of RSA 491:22 which requires that a petition for declaratory judgment be brought within six months of the filing of the writ that gives rise to the question, referring to the 1979 State action against the petitioner.

In September, 1983, the United States brought an action against Mottolo in the United States District Court for the District of New Hampshire on claims made pursuant to section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) (42 U.S.C.A. § 9607 (West 1983)). The federal government sought reimbursement under the aforementioned statute for the sum of approximately $744,000 spent between 1980 and 1982 in cleaning up the dump site on Mottolo's New Hampshire land.

In February, 1984, the State filed suit against Mottolo in the same federal court, seeking approximately $40,000 in response costs under the same federal statute, and asserting pendent State law claims of the same or a similar nature to those already pending in the superior court.

In August, 1984, both USF&G and Aetna renewed their motions to dismiss the petition for declaratory judgment. The petitioner Mottolo again objected, and the State joined with him in opposing the motion. After a hearing on the motion held in November, 1984, the Superior Court (*Gray*, J.), in December of the same year, granted the insurance companies' motions to dismiss. Mottolo did not contest this ruling. Quinn, an intervening party in the declaratory judgment petition since 1982, filed a motion for clarification. The court granted the motion in January, 1985, and indicated that the motions to dismiss had been granted based upon Mottolo's failure to petition for a declaratory judgment in accordance with the

provisions of RSA 491:22. In response, intervenor Quinn appeals the December, 1984, ruling of the superior court.

■■ Quinn claims that Mottolo's 1982 petition for a declaratory judgment, though filed after the six-month period allowed by RSA 491:22, should nonetheless not be dismissed on that ground because the delay was the result of a good faith mistake of law reasonably relied upon. RSA 491:22 provides that the six-month statute of limitations shall not apply in two sets of circumstances: (1) "where the facts giving rise to such coverage dispute are not known to, or reasonably discoverable by, the insurer until after expiration of such 6 month period;" and (2) where there is a court finding that the failure to file the petition was "the result of accident, mistake or misfortune and not due to neglect." This court has made these exceptions available to insureds as well as insurers, *National Grange Mut. Ins. Co. v. Watterson*, 120 N.H. 141, 145, 412 A.2d 1007, 1009 (1980), and has applied the exception concerning mistakes to those of law as well as of fact, *Guarantee Mut. Assurance Co. v. Middlesex Mut. Ins. Co.*, 115 N.H. 261, 264, 339 A.2d 6, 9 (1975).

Quinn's first argument is that Mottolo made a good faith mistake of law in relying upon Aetna's refusal to cover any liability for the storage of chemical waste on his Raymond land, which mistake was his reliance on his insurance policies' pollution exclusion clauses and his late discovery of a press release on September 28, 1970, from the New Hampshire Insurance Department to the effect that the department would in the future disapprove insurance policies containing such clauses.

The superior court's order granting Quinn's motion for clarification specifies that the granting of the motion of the insurers for dismissal was based upon a finding that the petitioner had not timely filed in accordance with RSA 491:22, and not upon the pollution exclusion clauses in the aforementioned policies. The trial court made no findings that either of the exceptions to the six-month statute of limitations contained in RSA 491:22 applied. Quinn raises this issue again on appeal, but we discern no mistake of law or fact on review of the record before us. This same argument was recently put before the United States Court of Appeals for the First Circuit. In a decision by Bownes, J., the court held, regarding the press release of the New Hampshire Insurance Commissioner, that no automatic nullification of a policy exclusion would, under New Hampshire law, have come about and, further, that the posture of the insurance commissioner with respect to pollution exclusions in liability insurance policies was not legally enforceable, because it was not adopted in accordance with the requirements of the New

Hampshire Administrative Procedure Act, RSA chapter 541-A. *Great Lakes Container v. National Union Fire Ins.*, 727 F.2d 30, 32 (1st Cir. 1984). We are in agreement with the First Circuit's analysis. Consequently, inasmuch as there was no change in the law, and therefore no mistake in respect to it, we shall confine our review to the lower court's finding of lack of timeliness.

Turning to that issue, we affirm the superior court's dismissal of the petition. Petitioner Mottolo was well aware, within the six-month period following the State's suit for injunctions and abatement of a nuisance, that coverage under his various liability insurance policies was a major factor in gauging his liability for the clean-up operations that must ensue. Through his attorneys he wrote to Aetna in June, 1979, and demanded that the insurer enter the suit and defend up to the coverage limits of the policy. In the letter, Mottolo attempted to describe the occurrence within the language of the policy as "possibly, the chemicals have left the premises, suddenly and accidentally . . . ," thereby triggering an exception to the pollution exclusion clause in the policy.

Thus, when Aetna, on July 13, 1979, refused coverage, Mottolo had in his possession all the facts that he needed to prompt him to file for a declaratory judgment on the coverage issue. Aetna's response was prompt and alerted Mottolo to the fact that he, the insured, and his insurer were at odds over the matter of coverage. Since within six months of the State's writ Mottolo was aware of the facts upon which coverage depended, he was not entitled to extend the period for bringing the declaratory judgment action and is barred by the six-month limitation. *Hartford Ins. Co. v. Bird*, 124 N.H. 784, 786, 480 A.2d 4, 5 (1984). Mottolo's petition should have been brought, on the facts before this court, no later than the end of 1979.

Finally, we note that the record before us indicates that Mottolo made no demand upon USF&G prior to the filing of his petition. Moreover, it appears that he attempted to add liability coverage for the New Hampshire dumping site by endorsement *after* the State brought suit against him and without giving his insurer any notice of it. Again, putting aside whether there ever was a validly subsisting coverage issue here, Mottolo could and should have petitioned for a declaratory judgment then, and not in 1982. Therefore, we conclude that the finding of the lower court is correct that, as against the suit in equity brought by the State, the petition for declaratory judgment is barred, and we affirm.

Quinn also claims that Mottolo's petition for a declaratory judgment is timely as against indemnity actions brought both by it and

by the other co-defendant in the case, Lewis Chemical Corporation, and that it is not barred by the provisions of RSA 491:22 because the indemnity actions are new claims which start the running of the statute again. This argument ignores the common set of operative facts from which both the indemnity action and the original suit in equity spring: liability for illegal and improper disposal of toxic wastes on the Raymond property. Moreover, Quinn was a co-defendant with Mottolo from the outset of the State's equity action in 1979. The State joined the Lewis Chemical Corporation to the suit two months later. All those facts were in place, from which Mottolo could have deduced that his insurance coverage was a major issue, not only because of sums that he might have to expend to clean-up his operation in Raymond, but also because of the possibility too easily foreseen that his co-defendant would seek to minimize its liability by claiming over against him.

Unlike the situation in *National Grange v. Watterson supra,* where an amended writ alleging new facts raised a coverage issue for the first time and properly triggered a new six-month period within which a petition for declaratory judgment could be filed, here the subsequent action by Quinn against Mottolo raises no distinct issues of coverage. The indemnity actions reiterate issues of responsibility and liability for the dumping which in the first instance should have cautioned Mottolo to seek a determination of his insurer's duty toward him under the terms of the applicable policy.

■ The indemnity actions will merely attempt to establish that primary liability for the dumping of the toxic wastes lay with Mottolo and that the chemical companies' own liability, if any, was merely derivative or vicarious. Such issues are in large measure identical to those likely to be contested in the underlying action. In any event, the subsisting issue both in the indemnity suits and, for Mottolo, in the underlying suit, was coverage for the abatement of the nuisance and for other expenditures attendant to this matter. What perhaps became a serious question after the filing of the first indemnity suit in 1982 could and should have been resolved in 1979 when the original writ raised for the first time the issue of coverage. The petition, therefore, is barred on these claims as well.

Quinn's final argument is that both the federal and State claims filed against Mottolo in the United States District Court are new matters which should start the running of RSA 491:22 afresh. Quinn draws a distinction between the State's original suit for abatement of a nuisance and for injunctive relief, and the recovery actions instituted

by the federal government and the State under CERCLA in the fall of 1983.

We take no position whether the enactment of a statute which sets up a new cause of action, under which an individual may be liable, constitutes a "fact" not known or discoverable, so as to invoke a new six-month period within which to file a petition for declaratory judgment. It is unnecesary to reach this issue. Under our holding today in *Jackson v. Federal Insurance Co.*, 127 N.H. 230, 232, 498 A.2d 757, 759 (1985), Mottolo is barred from invoking the aid of the State declaratory judgment statute, because that statute relates solely to State actions and not those under federal jurisdiction. *Id.* at 233, 498 A.2d at 759. If Mottolo wishes to pursue the matter of coverage, he must seek relief under the corresponding federal declaratory judgment act. *See* 28 U.S.C.A. § 2201 (West 1982); *see, e.g., Keene Corp. v. Ins. Co. of North America*, 667 F.2d 1034 (D.C. Cir. 1981), *cert. denied*, 455 U.S. 1007 (1982).

The federal procedure with respect to a petition for declaratory judgment has no six-month filing limitation; a proceeding is time barred only if the underlying cause of action giving rise to the questions to be resolved is time barred. *See Luckenbach Steamship Co. v. United States*, 312 F.2d 545, 548–49 (2d Cir. 1963). As we indicated in *Jackson*, "policies of federalism and comity make it appropriate for this court to allow the federal courts to resolve insurance coverage questions arising from suits over which those courts have exercised jurisdiction." *Jackson, supra* at 234, 498 A.2d at 760.

In conclusion, we hold that the petition for declaratory relief was not timely filed as against the original action, nor was its timeliness revived by the subsequent indemnity actions. Further, the original petition is inadequate to address the issue respecting a possible coverage question as a result of new federal causes of action accruing at a later date. Therefore, the ruling of the superior court is affirmed.

*Affirmed.*

All concurred.