**E.B. & A.C. WHITING COMPANY**

**v.**

**The HARTFORD FIRE INSURANCE COMPANY, the Hartford Casualty Insurance Company, New Hampshire Insurance Company, Aetna Casualty and Surety Company, and Liberty Mutual Insurance Company.**

Civ. A. No. 5:91CV169.

United States District Court,
D. Vermont.

Dec. 15, 1993.

Peter W. Hall, Abell, Kenlan, Schwiebert and Hall, P.C., Rutland, VT, Calvin W. Annino, Jr., Mark E. Draper, Louis S. Moore, Annino, Draper & Moore, Springfield, MA, for plaintiff E.B. & A.C. Whiting Co.

1. 42 U.S.C. § 9601 *et seq.* (1980).

William H. Quinn, Pierson, Wadhams, Quinn & Yates, Burlington, VT, Gregory P. Deschenes, Peabody and Brown, Boston, MA, for defendant Hartford Fire Ins. Co.

William H. Quinn, Pierson, Wadhams, Quinn & Yates, Burlington, VA, Gregory P. Deschenes and Marcus E. Cohn, Peabody and Brown, Boston, MA, for defendant Hartford Cas. Ins. Co.

George A. Holoch, Jr., David L. Cleary Associates, Rutland, VT, and Richard W. Bryan, Jackson & Campbell, P.C., Washington, DC, for defendant N.H. Ins. Co.

Thomas E. McCormick, McNamara, Fitzpatrick, McCormick & Mertz, Burlington, VT, and James L. Ackerman, Day, Berry & Howard, Kathleen S. Moore, Day, Berry & Howard, Boston, MA, for defendant Aetna Cas. & Sur. Co.

Allan R. Keyes, Ryan, Smith & Carbine, Ltd., Rutland, VT, and John P. McGann, Liberty Mut. Ins. Co. Legal Dept., Boston, MA, for defendant Liberty Mut. Ins. Co.

## *OPINION AND ORDER*

BILLINGS, District Judge.

This litigation involves a dispute between an insured and its insurance companies concerning insurance coverage of environmental clean-up costs incurred by the government under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA").[1] The parties come before the Court on cross motions for summary judgment on the duties to defend and to indemnify. The Court referred the matter to the federal Magistrate, who recommended in his Supplemental Report and Recommendation of September 23, 1993 that plaintiff's motion for summary judgment be granted on the duty to defend issue and that all parties' summary judgment motions regarding the duty to indemnify be denied.

The Magistrate further proposed that this Court grant Hartford's and Liberty Mutual's motion to strike with regard to paragraph 3 of the Prindiville affidavit pursuant to Fed. R.Civ.P. 56(e), and suggested that plaintiff's motion to strike be deemed moot. Every

party filed objections to the Magistrate's decisions. Upon de novo review, the Court adopts the Magistrate's Supplemental Report and Recommendation on the disposition of the summary judgment motions and the motions to strike for the reasons set forth below.

## Background

Plaintiff, a Vermont corporation, owned property in Vermont which the government placed on the National Priorities List pursuant to CERCLA regulations. After effecting a cleanup of the "Maltex Pond" portion of the site, the government sued plaintiff and other potentially responsible parties to recover its costs incurred in the clean-up. Plaintiff in turn sued its multiple insurers, including several national insurance companies, who refused to indemnify plaintiff against the government's claims.

Because the insurance policies are silent as to which state law will govern their validity and construction, the Court must decide this issue. In addition to determining the choice of law, the Court will address the issues of summary judgment on defendant's duties to defend and to indemnify plaintiff, the validity of the pollution exclusion clauses, the trigger theory of liability, and the parties' motions to strike.

## Discussion

### A. Choice of Law

■ Upon **de novo** review of the record, the Court affirms the Magistrate's choice of Vermont law to govern interpretation of the insurance contracts at issue here. Absent an effective choice of law by the parties, § 188 of the Restatement of Conflicts instructs courts to balance various factors to determine which state has the most significant relationship to the contract at issue.[2] In addition, the courts must take into account certain principles, including the relevant policies of the forum and other interested states, the protection of justified expectations, certainty, predictability and uniformity of result, and ease in determination and application of the law to be applied. Restatement (Second) of Conflicts § 6.

The Restatement further instructs that in applying the significant contacts test to liability insurance policies, "the location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located ... in a single state." Restatement (Second) of Conflict of Laws § 193, comment b, at 611–12.[3]

In accordance with § 193 and the guiding principles of the Restatement, the Court finds that the location of the site or insured risk is the factor which carries the most weight where multiple insurance policies would be governed by multiple state laws and would unduly complicate adjudication of insurance coverage for a single CERCLA site.[4] *See Chesapeake Utilities Corp. v. American Home Assur.*, 704 F.Supp. 551, 555–57 (D.Del.1989) (relying on §§ 188 and 193, the court concludes that the law of the state in which the site is located governs the insurance policies in question). While the

---

**2.** Section 188 of the Restatement provides that, in the absence of an effective choice of law by the parties, courts should balance the following factors in determining which law to apply:

    (a) the place of contracting,
    (b) the place of negotiation of the contract,
    (c) the place of performance,
    (d) the location of the subject matter of the contract,
and
    (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. Restatement (Second) of Conflict of Laws § 188.

**3.** Section 193 provides that:

    [t]he validity of a contract of fire, surety or casualty insurance and the rights created

thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in Section 6 to the transaction and the parties....

Restatement (Second) of Conflicts § 193 (1977).

**4.** In a case involving multiple sites, the court declared that "[i]t would burden this court onerously to consider twelve or more states' laws on every issue that arises in this case." *Maryland Cas. Co. v. W.R. Grace & Co.*, 1992 WL 142038, pp. 3–4 (S.D.N.Y.).

traditional rule of "lex loci contractus" may better apply to cases involving multiple sites, judicial economy and predictability dictate that in single site cases courts apply the law of the state where the site is located.[5]

In making this determination, the Court declines to follow Judge Coffrin's decision to apply the lex loci contractus rule in *Village of Morrisville Water & Light Dep't. v. United States Fidelity & Guar. Co.,* 775 F.Supp. 718 (D.Vt.1991). In *Morrisville,* plaintiff, a Vermont company, sued its Maryland insurance company for coverage of CERCLA clean-up costs of a Missouri site under liability and indemnity policies which were negotiated, delivered, and paid for in Vermont. Applying the factors of Restatement § 188,[6] Judge Coffrin concluded that Vermont had the most significant contacts with the contracts.[7]

In the present case, the insurance policies were all negotiated, executed and paid for in states other than Vermont. However, the hazardous waste site and the named insured, E.B. & A.C. Whiting, are both located in Vermont. Vermont is also the place of performance, where the insurers must defend and possibly indemnify the insured. Because defendants knew that plaintiff and the risk to be insured were both located in Vermont, they should have expected to defend any claims against plaintiff in Vermont.[8] Furthermore, as the state in which the toxic waste site is located, Vermont has the strongest interest in how the policies are interpreted because resolution of insurance issues impacts directly on Vermont environ-

mental policies.[9] *Accord Leksi, Inc. v. Federal Ins. Co.,* 736 F.Supp. 1331, 1333–6 (D.N.J.1990); *A. Johnson & Co. v. Aetna Casualty and Sur. Co.,* 741 F.Supp. 298, 300–02 (D.Mass.1990), *aff'd,* 933 F.2d 66 (1st Cir. 1991); *Nestle Foods Corp. v. Aetna Casualty and Sur. Co.,* 135 F.R.D. 101, 111 (D.N.J. 1990). Because Vermont has the most significant contacts to the insured risk, the Magistrate thus properly applied Vermont law in determining the rights of the parties under the insurance contracts.

### B. *Summary Judgment*

Having determined the applicable state law, the Court now turns to the parties' cross motions for summary judgment on the duties to defend and to indemnify. Summary judgment is appropriate when the Court finds that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The party opposing summary judgment must present "significant probative evidence" demonstrating that a genuine dispute of material fact exists, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

#### 1. *Duty to Defend*

Regarding the insurers' duty to defend plaintiff, Vermont law dictates that "so

---

**5.** Comment b to § 193 of the Restatement explains that in situations where "the policy covers a group of risks that are scattered throughout two or more states", the location of the risk has less significance. Where there is only one contaminated site at issue, applying the law of the site to the multiple insurance policies upholds the ideals of judicial economy and uniformity.

**6.** Judge Coffrin failed to apply § 193, which this Court finds is the Restatement section governing liability contracts.

**7.** In n. 6 of the *Morrisville* opinion, Judge Coffrin speculated that the Vermont Supreme Court would not adopt the view of numerous courts which have held that the state where the hazardous waste is located governs a dispute concerning policy coverage for CERCLA clean-up costs. This Court disagrees. In accordance with the Restatement and multiple district courts, the

Court finds that the law of the state where the site is located weighs significantly where only one CERCLA site is implicated.

**8.** Comment e to § 188 Subsection 2 states that "[w]hen the thing or the risk is the principal subject of the contract, it can often be assumed that the parties, to the extent that they thought about the matter at all, would expect that the local law of the state where the thing or risk was located would be applied to determine many of the issues arising under the contract."

**9.** Comment b to § 193 of the Restatement provides that "the state where the insured risk will be principally located during the term of the policy has a natural interest in the determination of issues arising under the insurance contract."

long as the possibility of coverage exists, an insurer has an initial duty to defend claims against the insured." *Vermont Gas Sys., Inc. v. United States Fidelity & Guar.*, 151 F.R.D. 268, 271 (D.Vt.1993) (citing *Vermont Gas Sys., Inc. v. United States Fidelity & Guar.*, 805 F.Supp. 227, 232–33 (D.Vt.1992) (same case). A possibility of coverage exists where the court cannot rule as a matter of law that no coverage will be available under the applicable policies. *Id.* Given that none of the defendants has established that the government's claims are excluded from coverage, the insurers have a duty to defend plaintiff.

### 2. *Duty to Indemnify*

■ The Court finds that several material issues of fact as to defendants' duty to indemnify remain in dispute. The parties contest (1) whether plaintiff knew of the environmental liability risk at the time it applied for insurance, (2) whether plaintiff's notice to defendants of the potential liability was "late", thereby vitiating coverage, and (3) whether an "occurrence" in fact triggered coverage under defendants' policies. Therefore, the Court affirms the Magistrate's denial of summary judgment on the duty to indemnify.

### C. *Pollution Exclusion*

■ Defendants argue that pollution exclusion clauses in each of the policies bar coverage for environmental cleanup of plaintiff's property. However, the Vermont Department of Insurance and Banking ("VDBI") promulgated regulations rendering such clauses invalid in Vermont.[10] The federal courts have subsequently upheld VDBI's authority to promulgate such regulations. *Gerrish Corp. v. Universal Underwriters Ins. Co.*, 754 F.Supp. 358, 371 (D.Vt.1991), *aff'd*, 947 F.2d 1023 (2d Cir.1991).

### D. *Trigger Theory*

The Court declines to adopt the "continuous trigger theory" of insurance liability ad-vocated by the Magistrate. Although the Vermont Supreme Court has not yet adopted a particular theory regarding liability coverage, it has stated in dicta that it would probably opt for the exposure rule over competing trigger theories. *American Protection Ins. Co. v. McMahan*, 151 Vt. 520, 562 A.2d 462 (1989). Because factual issues remain concerning whether and under which policies an occurrence actually triggered coverage, the Court deems the issue premature and declines to decide the appropriate standard at this time.

### E. *Motions to Strike*

■ Finally, the Court adopts the Magistrate's recommendation that Hartford's and Liberty Mutual's motion to strike be granted in part. The Court agrees that paragraph 3 of the Prindiville affidavit is not based on personal knowledge as required under Fed. R.Civ.P. 56(e) and is therefore inappropriate.

### *Conclusions*

Based on the foregoing conclusions, the Court hereby GRANTS plaintiff's motion for summary judgment on the duty to defend issue, DENIES all parties' summary judgment motions regarding the duty to indemnify, and GRANTS defendants' motion to strike with respect to paragraph 3 of the Prindiville affidavit.

SO ORDERED.

---

10. A narrow window between January 1, 1983 and October 18, 1983 exists during which pollution exclusion clauses were valid. 8 V.S.A. § 3541(c) (1984). Defendants whose policies contain a pollution exclusion clause during this period may avoid coverage provided they establish that dispersal of the pollutants was "sudden and accidental."