MASKA U.S., INC., Plaintiff–Appellee,

v.

KANSA GENERAL INSURANCE COMPANY, American Home Assurance Company, New Hampshire Insurance Company, Scottish & York Insurance Company, Reliance Insurance Company, Cigna Insurance Company, Defendants,

Zurich Insurance Company and United States Fire Insurance Company, Defendants–Appellants.

Docket Nos. 98–9385(L), 98–9387(C)

United States Court of Appeals, Second Circuit.

Argued: June 8, 1999

Decided: Nov. 29, 1999

John E. Failla, Morgan, Lewis & Bockius LLP, New York, N.Y. (Catherine A. Ludden and Jennifer A. Roney, on the brief), for plaintiff-appellee.

William H. Quinn, Pierson Wadhams Quinn & Yates, Burlington, VT, for defendant-appellant Zurich Insurance Company.

Roger E. Warin, Steptoe & Johnson LLP, Washington, D.C. (Shannen W. Coffin, on the brief), for defendant-appellant United States Fire Insurance Company.

Before: LEVAL and SOTOMAYOR, Circuit Judges, and TRAGER, District Judge.*

SOTOMAYOR, Circuit Judge:

This appeal involves a dispute between an insured, Maska U.S.A., Inc. ("Maska"), and two of its insurance carriers, Zurich Insurance Company ("Zurich") and United States Fire Insurance Company ("U.S. Fire") (collectively, the "insurers"), concerning coverage for liability costs and related defense costs incurred in connection with environmental contamination at Maska's manufacturing facility in Bradford, Vermont. The insurers appeal from a judgment entered by the United States District Court for the District of Vermont (Murtha, C.J.) following a jury verdict in Maska's favor. For the reasons that follow, we reverse the judgment below and hold that the Zurich and U.S. Fire policies exclude coverage for the environmental liability claims at issue in this case.

## BACKGROUND

Maska is a Vermont corporation that manufactured National Hockey League jerseys at its facility in Bradford, Vermont

---

* The Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

(the "Bradford facility") from 1983 to 1995. Maska used the chemical solvent perchloroethylene ("perc") to dry-clean fabric used in the production process. For approximately six years, Maska discharged wastewater containing perc into floor drains, which emptied into the ground east of the manufacturing building. In September 1989, the Vermont Department of Environmental Conservation ("VDEC") observed the wastewater discharges during a routine inspection of the Bradford facility and ordered Maska to stop that practice. Maska's subsequent investigation revealed perc contamination of the soil and groundwater at the Bradford facility, which Maska reported to VDEC.

In August 1991, VDEC directed Maska to provide additional information about the extent of the perc contamination for purposes of developing a viable cleanup strategy. VDEC informed Maska that the Bradford facility had been included in the U.S. Environmental Protection Agency's Comprehensive Environmental Response, Compensation and Liability Information System ("CERCLIS"), a computerized database containing information about sites being evaluated under the federal Superfund program, and would also be listed on the Vermont Hazardous Sites List, "a list of locations within the state which may pose a threat to human health or the environment." In June 1996, Maska entered into a consent decree with the State of Vermont in which the company agreed to clean up the contaminated soil and groundwater at an estimated cost of approximately $2.5 million. In the meantime, T. Copeland & Sons, Inc. ("Copeland"), which

owned property adjacent to the Bradford facility, brought suit against Maska alleging that the company's operations had resulted in contamination of the Copeland property. Maska settled the Copeland litigation in June 1995 for $7 million. Maska also purchased a second adjoining property for $125,000 after the owners, the Dunnack family, complained that the perc contamination had migrated beneath their home.

In April 1992, Maska contacted its insurance carriers, including defendants, seeking insurance coverage for these claims under a series of primary and excess general liability policies covering the period between February 1, 1983, and April 24, 1993.[1] The carriers declined coverage, citing a series of so-called "pollution exclusions" in the policies that purportedly relieved the carriers of any obligation to indemnify or defend the company with respect to environmental liability claims of the type asserted against Maska. Maska brought this action in August 1993 alleging that the carriers had breached their duty to indemnify the company for its environmental cleanup and settlement costs, as well as their duty to defend Maska against the VDEC, Copeland and Dunnack claims.[2]

Following discovery, Maska moved for partial summary judgment against its primary carriers, Kansa, Zurich and American Home, limited to their duty to defend. In September 1996, Magistrate Judge Jerome J. Niedermeier issued a report recommending that the district court grant Maska's motion. The magistrate judge

1. Maska was continuously insured during this ten-year period. From February 1, 1983, to February 21, 1986, Kansa General Insurance Company ("Kansa") provided primary coverage, while U.S. Fire provided excess coverage. Zurich issued primary general liability policies covering Maska from February 21, 1986, to October 24, 1988, during which period Maska had no excess coverage. From October 24, 1988, to April 24, 1993, American Home Assurance Company ("American Home") provided primary coverage, while Reliance Insurance Company ("Reliance"), Cigna Insurance Company ("Cigna") and New Hampshire Insurance Company provided excess coverage. Although these policies were in some instances issued to Maska's corporate affiliates in Canada (Belcourt Construction Company, Ltd., Sport Maska, Inc., and Finansca, Inc.), Maska was covered under each of the policies.

2. Maska had voluntarily dismissed defendant Scottish & York Insurance Company in December 1994.

found that the Vermont Department of Banking and Insurance ("VDBI"), the state agency charged with pre-approving all insurance policies sold to Vermont insureds, had consistently disapproved policies containing pollution exclusions. On that basis, the magistrate judge concluded that the "pollution exclusions were invalid as violative of Vermont public policy as manifested in VDBI policy." The district court agreed, concluding that "pollution exclusion provisions are uniformly unenforceable in the State of Vermont." Accordingly, in December 1996, the district court granted summary judgment to Maska on the ground that Kansa, Zurich and American Home had breached their duty to defend against the underlying environmental liability claims.[3] The case then proceeded to trial on Maska's claims for indemnification.

While this case was pending in the district court, Kansa, a Finnish corporation, declared bankruptcy. Liquidation proceedings subsequently commenced both in Finland and in Canada, where Kansa had a branch office. In April 1995, the United States Bankruptcy Court for the Southern District of New York entered an order enjoining the enforcement of any judicial order or award in the United States against Kansa or against Kansa's property in the United States. In May 1997, after the district court in this case granted summary judgment against Kansa and the other primary carriers, Maska served proof of its claims against Kansa on the court-appointed liquidator in Canada. The liquidator disallowed Maska's claims, and the Canadian courts subsequently determined that any judgment rendered by the district court in this case would not be enforceable in Canada. Recognizing that the various bankruptcy court rulings made it impossible to enforce a judgment against Kansa in either the United States or Canada, Maska voluntarily dismissed its claims against Kansa in June 1998. Maska then moved for summary judgment against excess insurer U.S. Fire, arguing that as a result of Kansa's insolvency, U.S. Fire was obliged to "drop down" to defend Maska in Kansa's place. The district court agreed and granted Maska's motion.

Shortly before trial on Maska's indemnification claims, Maska reached settlements with American Home, Cigna and New Hampshire Insurance Company. Maska's claims against Zurich, U.S. Fire and Reliance were then tried to a jury from June 29 to July 8, 1998. By special verdict, the jury found that a covered occurrence had taken place during certain of the Zurich and U.S. Fire policy periods, that Maska's indemnity damages totaled $4,081,746 and that Maska spent $5,069,321 to defend itself against the underlying claims.[4] After the verdict, the district court allocated $1,411,688.08 of Maska's total indemnity damages to Zurich and $527,936.80 to U.S. Fire, these sums representing each insurer's time on the risk. The court also held that Zurich and U.S. Fire were jointly and severally liable for Maska's approximately $5 million in defense costs. This appeal followed.

## DISCUSSION

In this diversity action, we must decide whether under Vermont law,[5] the Zurich and U.S. Fire insurance policies

---

**3.** The defendants had cross-moved for summary judgment on the claims asserted against them. The district court adopted the magistrate judge's recommendations that it deny the defendants' cross-motions with the exception of granting Reliance's cross-motion insofar as it concerned a policy for against Maska had made an untimely claim and Kansa's cross-motion insofar as it concerned a policy that did not provide coverage for Maska's operations in the United States.

**4.** The jury also found that a covered occurrence had taken place during one of the Reliance policy periods, but the damages it awarded were below the level at which that excess policy was triggered.

**5.** The insurers argued before the district court that their policies were governed by Canadian law. For purposes of this appeal, however, the parties agree that Vermont law applies.

provide coverage for the liability costs and related defense costs that Maska incurred in connection with the environmental contamination of the Bradford facility and neighboring properties.[6] We review the district court's determination of this state law question *de novo. See State of New York v. Blank*, 27 F.3d 783, 788 (2d Cir. 1994). For purposes of our analysis, we look to the state's decisional law, as well as to its constitution and statutes. *See Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir.1994). To the extent that state law is uncertain or ambiguous, this Court must "carefully ... predict" how the state's highest court would resolve the uncertainty or ambiguity. *See id.* In making this prediction, we give the "fullest weight" to pronouncements of the state's highest court, here the Vermont Supreme Court, while giving "proper regard" to relevant rulings of the state's lower courts. *See id.* We may also consider "decisions in other jurisdictions on the same or analogous issues." *Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 48 (2d Cir.1993).

### I. *Zurich Policies*

Zurich issued two primary liability policies to Maska, covering the periods February 21, 1986, to April 1, 1988 and April 1, 1988, to October 24, 1988. Each of the Zurich policies contains an "absolute pollution exclusion," which excludes all coverage for "[l]iability of the Insured arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants ... at or from premises owned or occupied by or rented to the. Insured," as well as "Loss, Cost, or Expense arising out of any Government Demand, Direction or Request that the Insured test for, monitor, clean up, remove, contain, treat, detox-

ify or neutralize pollutants." Maska does not dispute either that the environmental liability claims asserted against the company arose out of the "discharge ... of pollutants ... at or from [its] premises" or that the company incurred costs "arising out of" VDEC's directives to investigate and clean up contamination at the Bradford facility. Maska argues, however, that the pollution exclusions in the Zurich policies are invalid because Zurich never obtained VDBI's approval of its policy forms, as required by Vermont statute, and because the pollution exclusions violate Vermont public policy, as expressed by VDBI. We address these contentions in turn.

### A. *Failure to File Policy Forms*

The Vermont code provides that "[n]o basic insurance policy, certificate or annuity contract form ... or endorsement form ... shall be delivered, or issued for delivery in [Vermont], unless the form has been filed with and approved by the commissioner" of VDBI. Vt. Stat. Ann. tit. 8, § 3541(a) (Supp.1999); *see also* Vt. Stat. Ann. tit. 8, § 4201 (1993) ("A policy of insurance covering against loss or damage resulting from accident to, or injury suffered by an employee or other person, and for which the insured is liable, shall not be issued or delivered to a person, firm or corporation resident of, or doing business in [Vermont], until a copy of the form thereof has been filed with the commissioner; and it shall not be issued or delivered unless approved by him."). Maska contends for the first time on appeal that the exclusions in the Zurich policies are invalid because Zurich failed to file its policy forms with VDBI.[7] Maska, however, has waived this claim.

---

**6.** The insurers raise numerous other claims in this appeal, including challenges to the district court's evidentiary rulings and to the court's allocation of defense costs on a joint and several basis. Because we conclude that the Zurich and U.S. Fire policies do not provide coverage under the circumstances of this case, we do not reach the insurers' other claims.

**7.** Maska's position finds some support in Vermont law. *See Vermont Am. Corp. v. American Employers Ins. Co.*, No. 330–6–95 WnCy, slip op. at 4 (Vt.Super. Ct. Washington County Oct. 31, 1997) ("It would be unreasonable to allow insurers to benefit from a failure to comply with Vermont insurance regulations or a failure to prove that the exclusions were properly filed. The court, therefore, will not

Maska specifically informed the district court in its summary judgment papers that it was not contending that Zurich should have submitted its policy forms to VDBI for approval. At oral argument before this Court, Maska's counsel represented that he raised the issue during a March 1996 summary judgment hearing. Our review of the transcript of that hearing, however, only confirms that Maska abandoned this claim below. *See* Transcript of Mar. 5, 1996 Hearing, at 10 ("[Counsel for defendants] is right in that ... we never complained that these Defendants did not file the particular policies for approval with the Vermont Department; and he is right, that is not our complaint, that's a matter for the Vermont Department to consider as to whether or not there was any breach of any filing obligations."); *id.* at 23 ("[I]t is irrelevant, from Maska's standpoint, whether or not the insurers breached any filing rules or—or Vermont Department rules with respect to filing. The issue is the substantive issue of the interpretation and enforceability of the pollution exclusion.").[8]

■ "[I]t is a well-established general rule that an appellate court will not consid-

---

void the entire policy but will conclude the pollution exclusions are void."). In addition, after oral argument in this case, the Vermont Supreme Court decided *Agency of Natural Resources v. Glens Falls Insurance Company*, 736 A.2d 768 (Vt.1999), in which it held that an agreement between the state and a private insurance carrier to share the cost of cleaning up petroleum contamination was void because the Vermont statute authorizing state expenditures for petroleum cleanup covers only "uninsured costs." *Id.* at 771 (citing Vt. Stat. Ann. tit. 10, § 1941(b) (Supp.1997)). In so holding, the court assumed that the relevant insurance policies covered environmental cleanup costs, even though those policies contained pollution exclusions, because the carrier had not obtained timely approval of the exclusions from VDBI. *See id.* ("The agreement ... to expend state funds was plainly premised upon the representation and understanding that [the property owner] was uninsured for the 1987 and 1989 releases, an understanding that later proved to be unfounded."). For reasons that are not apparent, however, the court in *Agency of Natural Resources* did not discuss or even mention the question of whether an insurer's failure to comply with statutory filing requirements automatically nullifies a disputed policy exclusion. The answer to this question is by no means obvious, principally because the statute provides for the imposition of administrative penalties, including a fine and possible license revocation, on any company that willfully issues an unapproved liability insurance policy. *See* Vt. Stat. Ann. tit. 8, § 4209 (Supp.1999). In fact, most courts that have addressed this question have declined to invalidate a policy exclusion merely because the insurer failed to obtain regulatory approval. *See, e.g., Federal Deposit Ins. Corp. v. American Cas. Co. of Reading, PA*, 975 F.2d 677, 682–83 (10th Cir.1992) (applying Oklahoma law); *Great Lakes Container Corp. v.*

*National Union Fire Ins. Co. of Pittsburgh, PA.*, 727 F.2d 30, 32 (1st Cir.1984) (applying New Hampshire law); *Cage v. Litchfield Mut. Ins. Co.*, 45 Conn.Supp. 298, 713 A.2d 281, 285–89 (1997) (collecting cases). *But see, e.g., Hawkins Chem., Inc. v. Westchester Fire Ins. Co.*, 159 F.3d 348, 352 (8th Cir.1998) (holding that under Minnesota law, "an insurance policy or provision not filed with the Commissioner of Insurance is unenforceable"). Under these circumstances, we are not convinced that the Vermont Supreme Court, if the issue were squarely presented, would declare a particular exclusion invalid—while enforcing the remainder of the policy—based on the insurer's failure to file policy forms with VDBI.

8. During the hearing, Maska argued that the pollution exclusions in the various policies were invalid under Vt. Stat. Ann. tit. 8, § 4208 (1993), which states: "A policy issued in violation of such provisions shall be held valid, but shall be construed as provided in such provisions. When a provision in such policy is in conflict with such provisions, the rights, duties and obligations of the insurer, the policyholder and the beneficiary shall be governed by such provisions." However, the phrase "such provisions" in § 4208 is clearly a reference to the substantive conditions that must be included in all liability insurance policies under § 4203 (entitled "Required Conditions"), none of which is at issue in this case, and not to the filing requirements set forth in § 4201. *See Vermont American*, slip op. at 4 ("Under section 4208, a policy issued in violation of sections 4102–4203 and §§ 4205–4209 is valid, but shall be construed as if it meets the required conditions. These conditions, however, are not at issue in this case and section 4208 is not instructive in this instance.").

er an issue raised for the first time on appeal." *Greene v. United States*, 13 F.3d 577, 586 (2d Cir.1994); *see also Gurary v. Winehouse*, 190 F.3d 37, 44 (2d Cir.1999) ("Having failed to make the present argument to the district court, plaintiff will not be heard to advance it here."). We may exercise our discretion to consider a newly raised issue in limited circumstances, for instance, "when we think it necessary to remedy an obvious injustice." *See Greene*, 13 F.3d at 586. Given Maska's explicit and repeated disclaimer of any argument based on Zurich's failure to file its policy forms with VDBI, however, we perceive no obvious injustice to warrant our reviving this abandoned argument on appeal.

### B. *Public Policy*

The argument Maska did press below, which the district court accepted, is that pollution exclusions are unenforceable in Vermont because they contravene the state's public policy. In addressing this contention, "[w]e must ... bear in mind that in a diversity case the federal courts are not free to develop their own notions of what should be required by the public policy of the state, but are bound to apply the state law as to these requirements." *Cornellier v. American Cas. Co.*, 389 F.2d 641, 644 (2d Cir.1968). It has long been established in Vermont that "contracts [are] not illegal and void as being against public policy unless it could be said that they [are] injurious to the interests of the public or contravene[ ] some established interest of society." *State v. Barnett*, 110 Vt. 221, 3 A.2d 521, 526 (1939) (citing *Bessette v. St. Albans Co-Operative Creamery, Inc.*, 107 Vt. 103, 176 A. 307, 310 (1935)). "[A] court's power to invalidate contractual provisions as offensive to public policy is not exercised in every case in which the contract may seem to operate harshly on one of the parties." *Cornellier*, 389 F.2d at 644 (applying Vermont law).

The Vermont insurance statutes do not express any particular policy disfavoring pollution exclusions. They simply require insurance companies to obtain VDBI's approval before issuing a policy, *see* Vt. Stat. Ann. tit. 8, §§ 3541(a), 4201, and direct VDBI to disapprove a policy form "only" if, among other things, "it contains or incorporates by reference ... any inconsistent, ambiguous, or misleading clauses, or exceptions and conditions which deceptively affect the risk purported to be assumed in the general coverage of the contract." Vt. Stat. Ann. tit. 8, § 3542 (1984). Neither has the Vermont Supreme Court announced a public policy against pollution exclusions. Absent an explicit statutory or common law directive, the only basis to conclude that the exclusions in the Zurich policies violate Vermont public policy is VDBI's practice of disapproving similar exclusions in policies filed for approval.

There is evidence in the record that since 1970, when liability insurers began including pollution exclusions in their policies, VDBI has disapproved such policies based on its determination that the exclusions were "unfair and discriminatory to some and indeed most risks" and inconsistent with the "public expectation of the level of coverage or the degree of coverage that [is] supposed to be available when [one] purchased a general liability policy." For a brief period from January to October 1983, VDBI approved policies containing pollution exclusions after the Insurance Services Office ("ISO"), an insurance trade association authorized to act on behalf of its member insurance companies, gave assurances that pollution coverage was separately available in Vermont. When VDBI learned that such coverage was not in fact available, however, it reinstated its practice of disapproving the exclusions. That practice continues today, although VDBI now has a mechanism for approving pollution exclusions on a risk-by-risk basis in cases where, for example, the insured's operations involve a particularly high risk of environmental liability and the insured would otherwise be unable to obtain coverage.

Maska argues that VDBI's practice over the past three decades created an enforceable public policy against pollution exclusions in Vermont insurance policies. However, even assuming that VDBI's practice as a factual matter constitutes a consistent policy favoring insurance coverage of environmental claims, that policy cannot invalidate all pollution exclusions as a matter of law. The Vermont Administrative Procedure Act ("APA"), Vt. Stat. Ann. tit. 3, § 801 *et seq.* (1995 & Supp. 1998), provides that an "agency statement of general applicability which implements, interprets, or prescribes law or policy" has no legal effect unless the agency follows the procedures for adoption of a rule. *See id.* § 801(b)(9) (definition of agency rule); *id.* § 846 (agency's failure to follow certain rulemaking procedures "shall prevent a rule from taking effect"); *cf. In re Diel,* 158 Vt. 549, 614 A.2d 1223, 1226–27 (1992) (noting that Department of Social Welfare's change of policy would be invalid if it constituted rulemaking). These procedures include filing and publishing a proposed rule, holding a public hearing, receiving and responding to public comments, filing a final proposal (which is reviewed by the legislative committee on administrative rules) and filing an adopted rule. Vt. Stat. Ann. tit. 3, §§ 836–843. VDBI presumably could have formalized its policy of disapproving pollution exclusions through rulemaking, *see* Vt. Stat. Ann. tit. 8, § 75 (Supp.1999) (authorizing commissioner of VDBI to "adopt rules as shall be ... necessary to carry out the purposes of [the statute]"), but it did not. VDBI's policy therefore does not have the force of law. *See Great Lakes Container Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA.,* 727 F.2d 30, 32 (1st Cir. 1984) (concluding that insurance commissioner's policy statement that his agency "formally disapproved endorsement forms contained in general liability policies which excluded coverage for pollution and contamination causing damages or injuries" was unenforceable because it failed to meet the requirements of the New

Hampshire APA), *cited with approval in Mottolo v. United States Fidelity & Guar. Co.,* 127 N.H. 279, 498 A.2d 760, 763 (1985).

Maska attempts to escape this conclusion by pointing out that VDBI developed its policy through a series of adjudicative decisions in which the agency disapproved specific policy forms submitted by individual insurers and ISO. These decisions, Maska argues, were made in contested cases before the agency, *see* Vt. Stat. Ann. tit. 3, § 801(b)(2) (defining a "contested case" as "a proceeding ... in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing"), in which the APA rulemaking procedures did not apply. *See In re Petition of Telesystems Corp.,* 143 Vt. 504, 469 A.2d 1169, 1173 (1983) (assuming that rulemaking procedures do not apply to an adjudicative decision made within the context of a contested case). In this case, however, Zurich never submitted its policy forms to VDBI, and VDBI never had an opportunity to approve or disapprove them. Thus, because there has been no agency action with respect to the Zurich policies, this appeal does not involve a contested case. *Cf. id.* at 1172–73 (holding that a policy statement in a Public Service Board order was intended to apply solely to the case on appeal and thus did not constitute rulemaking). Instead, Maska asks us to treat VDBI's policy, as it has been applied to individual insurance policies over the years, as a "rule": an "agency statement of general applicability which .... prescribes" Vermont public policy. *See* Vt. Stat. Ann. § 801(b)(9). Absent compliance with the APA's rulemaking procedures, we have no authority to do so.

Maska also maintains that several federal and state courts have ruled that pollution exclusions are not enforceable under Vermont law. We disagree with Maska's characterization of these cases. In *Town of Cornwall v. St. Paul Fire & Marine Insurance Co.,* No. S54–88 Ac, slip op. at

10–11 (Vt. Super. Ct. Addison County June 20, 1990), for example, the court refused to enforce a pollution exclusion in an insurance policy after VDBI specifically notified the insurer and its agent (ISO) that it was withdrawing its prior approval of the exclusion, and the insurer failed to appeal VDBI's decision. *Town of Cornwall* therefore involved a contested case in which the APA rulemaking procedures did not apply. *See id.* at 8 n. 3 (rejecting insurer's argument that VDBI had failed to comply with the APA on the ground that rulemaking procedures were "inapplicable to the question of approval or disapproval of particular insurance forms by VDBI"). Similarly, in *Vermont American Corp. v. American Employers Insurance Co.,* No. 330–6–95 WnCy, slip op. at 4–5 (Vt. Super. Ct. Washington County Oct. 31, 1997), VDBI had disapproved a policy form containing a pollution exclusion, which ISO had submitted on behalf of several of the defendant insurers. As the court recognized, VDBI treated the ISO filing as a request for approval of a form, which constitutes a contested case under the APA. *See id.* at 6–7.[9] Because both opinions involved a contested case and not rulemaking procedures, VDBI's policy can have force only in the individual, contested case in which it has been applied.

Maska's reliance on *E.B. & A.C. Whiting Co. v. Hartford Fire Insurance Co.,* 838 F.Supp. 863 (D.Vt.1993), is also misplaced. The district court in *Whiting* held that the pollution exclusions in the plaintiff's insurance policies did not bar coverage for the environmental cleanup of the plaintiff's property. *See id.* at 867. The court based this holding, however, on its mistaken belief that VDBI had promulgat-

ed regulations rendering pollution exclusions invalid in Vermont. *See id.* Had VDBI promulgated such regulations, this would be a different case altogether. It is precisely VDBI's failure to formalize its policy through rulemaking under the APA and its willingness to consider policies that contain exclusions in certain cases that dooms Maska's public policy argument in this case.

The State of Vermont is, of course, free to establish a public policy prohibiting pollution exclusions in Vermont insurance policies. We simply find no statute, binding precedent or valid administrative rule expressing such a policy.[10] Nor can we say that the exclusions in the Zurich policies—to which Maska freely agreed and which in all likelihood lowered Maska's premiums—are plainly "injurious to the interests of the public or contravene[ ] some established interest of society." *Barnett,* 3 A.2d at 526. To the contrary, pollution exclusions in general liability policies are routinely enforced in other states. *See, e.g., Stamford Wallpaper Co. v. TIG Ins.,* 138 F.3d 75, 79–81 (2d Cir.1998) (affirming the district court's denial of summary judgment to the plaintiff insured based on the inapplicability of the "sudden and accidental" exception to the pollution exclusion in the insured's policy) (applying Connecticut law); *State of New York v. AMRO Realty Corp.,* 936 F.2d 1420, 1426–29 (2d Cir.1991) (affirming the district court's grant of summary judgment to the third-party defendant insurers based on the inapplicability of the "sudden and accidental" exception to the pollution exclusions in the insured's policies) (applying New York law). We see no reason, therefore, why the Vermont Supreme Court would depart in this case

---

**9.** Although some of the insurers in *Vermont American* had not authorized ISO to act as their agent, the court ruled that these insurers could not enforce the pollution exclusions in their policies because they had not demonstrated that the exclusions had been properly filed with VDBI. *See Vermont American,* slip op. at 4. As discussed *supra* in Part I.A., Maska abandoned this particular argument

before the district court, and we do not consider it on appeal.

**10.** Unlike the situation with respect to the two other states in this Circuit—Connecticut and New York—we are unable to certify this state law question to the Supreme Court of Vermont. *See* 1999 Conn. Acts 99–107 (Reg. Sess.); N.Y. Ct.App. R. 500.17.

from its "well established" precedent that an insurer "should not be deprived of unambiguous provisions put into a policy for its benefit." *Northern Sec. Ins. Co. v. Hatch,* 165 Vt. 383, 683 A.2d 392, 394 (1996). Accordingly, we hold that the Zurich policies exclude coverage for the VDEC, Copeland and Dunnack claims.

## II. *U.S. Fire Policy*

U.S. Fire issued three policies to Maska, only one of which, the "Defender" policy, is at issue in this appeal. The Defender policy is an excess insurance policy—*i.e.,* it insures Maska for amounts in excess of the primary insurer's (Kansa's) policy limits—in effect from February 21, 1985, to February 21, 1986. U.S. Fire contends that it was not required under the terms of the Defender policy to "drop down" to indemnify or defend Maska in the event of Kansa's insolvency. Even assuming that Kansa's bankruptcy triggered the Defender policy, we conclude that Maska is not entitled to coverage for the underlying claims in this case.

 Like the Zurich policies, the U.S. Fire policy contains a pollution exclusion, although a more limited one, which provides:

> This policy shall not apply ... to [personal injury or property damage] liability arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalies, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Unlike Zurich, however, U.S. Fire was a member of ISO when it issued the Defender policy. Prior to issuing the policy, U.S. Fire submitted a "filing authorization form," which authorized VDBI

> to accept as filed on behalf of the undersigned MEMBER ... of the INSUR-ANCE SERVICES OFFICE, such material specified on this form relating to Manuals or Classifications, Rules and Rates, Rating Plans and Rules, Policy Forms and Endorsements and any information pertaining thereto, which are filed in your office by Insurance Services Office with respect to one or more kinds of insurance, subdivisions and kinds of insurance or classes or risks, or any part or combination of the foregoing for which the undersigned is now or hereafter licensed to transact business.

In *Gerrish Corp. v. Universal Underwriters Ins. Co.,* 947 F.2d 1023, 1025–26 (2d Cir.1991), we were presented with an insurer who signed a similar filing authorization empowering ISO to act on its behalf with VDBI. ISO subsequently obtained VDBI's approval of Endorsement GL 01 54, entitled "Contamination or Pollution Exception (Vermont)." This endorsement, which applied to all policies issued by ISO members after July 1, 1984, deleted the existing pollution exclusion and provided coverage of environmental liability claims, subject to an aggregate limit of $500,000, on a "claims-made" basis, *i.e.,* provided that the claims were first made against the insured and reported to the insurer during the policy period. Relying on agency principles, we held in *Gerrish* that a policy issued by the insurer in September 1984, which contained a sudden and accidental pollution exclusion like the one in the Defender policy, was amended by Endorsement GL 01 54:

> The ISO endorsement was, in effect, part of the insurance contract between [insurer] Universal and [insured] Gerrish. The ISO endorsement affected all policies issued after July 1, 1984. The Gerrish policy was issued on September 5, 1984, while the ISO endorsement was in effect. The ISO endorsement, therefore, affected the Gerrish policy and negated the original pollution exclusions set forth therein.

*Id.* at 1028.

In this case, similarly, U.S. Fire was a member of ISO when it issued the Defend-

er policy to Maska, and the policy was issued while Endorsement GL 01 54 was still in effect. Under *Gerrish*, Endorsement GL 01 54 is thus incorporated by law into the Defender policy, and the limited claims-made pollution coverage in the endorsement replaces the sudden and accidental pollution exclusion in the policy. That endorsement covers environmental liability claims, but only if the claims are first made against the insured and reported to the insurer during the policy period. The perc contamination at Maska's Bradford facility was not even discovered until 1989, three years after the policy period had expired. Therefore, the Defender policy, as amended by Endorsement GL 01 54, does not provide coverage for the VDEC, Copeland and Dunnack claims.

Significantly, Maska neither disputes these facts nor attempts to distinguish *Gerrish*, but contends that U.S. Fire failed to preserve its *Gerrish* argument for appeal. Maska notes that the magistrate judge, in his 1996 report recommending that the district court deny U.S. Fire's motion for summary judgment, concluded that "[U.S. Fire] cannot take advantage of [the *Gerrish*] holding since it denies that the ISO acted as its agent because the policies were issued and delivered outside Vermont. Accordingly, [U.S. Fire] cannot assert that the endorsement bars Maska's claims." Although U.S. Fire filed numerous objections to the magistrate judge's report and recommendation, it failed to object specifically to this conclusion. Maska argues that this failure amounted to a waiver of any claim that the Defender policy was amended by Endorsement GL 01 54. *See Grosso v. Artuz*, No. 97 Civ. 1623(SAS), 1998 WL 542312, at *3 (S.D.N.Y. Aug. 25, 1998) (collecting cases and concluding that "a party must specifically object to those recommendations he disagrees with in order to preserve the substance of such recommendations for appellate review").

Initially, we are puzzled by the magistrate judge's conclusion that simply because U.S. Fire argued that its policy was issued and delivered outside Vermont, and therefore was not governed by Vermont law, it had waived any argument that ISO was its agent to the extent the policy was deemed to have been issued in Vermont. This is not, moreover, a case in which a party has completely failed to alert the district court to a magistrate judge's error. Although U.S. Fire did not specifically object to the magistrate judge's resolution of the *Gerrish* issue at the summary judgment stage, it attempted to introduce evidence of its membership in ISO and the applicability of Endorsement CG 01 54 at trial. According to U.S. Fire, these efforts were undertaken with the understanding that a district court's "denial of a defense motion for summary judgment ... merely leaves the issue for trial, and does not destroy the defense." *Thompson v. Mahre*, 110 F.3d 716, 720 (9th Cir.1997).

■ We agree that a failure to object to a denial of summary judgment is not a waiver of a claim a party subsequently raises at trial. We therefore hold that Maska is not entitled to coverage under the Defender policy, as amended by Endorsement CG 01 54, because the VDEC, Copeland and Dunnack claims arose well after the expiration of the policy period.

## CONCLUSION

We hold that the absolute pollution exclusions in the Zurich policies do not violate any established Vermont public policy, and that Maska has waived its contention that Zurich's failure to comply with the statutory filing requirements voids the exclusions. We further hold that coverage is not available under U.S. Fire's Defender policy because the underlying environmental liability claims were neither asserted against Maska nor reported to U.S. Fire during the policy period. The judgment of the district court is therefore reversed, and the case is remanded with directions

to enter judgment in favor of the insurers on all claims.